STREETMAN v. ANDRESS MOTOR CO., Inc., et al. (AMERICAN MUT. LIABILITY INS. CO., et al., Intervenors).

No. 5803.

Court of Appeal of Louisiana. Second Circuit.

March 8, 1939.

Rehearing Denied March 31, 1939.

Writ of Certiorari and Review Denied May 29, 1939.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellants.

J. Fair Hardin, of Shreveport, for appellee.

Jackson & Mayer, of Shreveport, for intervenor-appellee.

HAMITER, Judge.

Serious injuries resulted to plaintiff when he fell from a ladder. At the time he was engaged in the discharge of his duties as a skilled employee of the H. H. Bain Roofing Company. A truck owned by the Andress Motor Company, Inc., and operated by its employee, Lem Brooks, came in contact with the ladder on which he was standing, and the fall occurred.

Plaintiff attributes the accident and resulting injuries to the alleged negligence of the truck operator, and in this proceeding he seeks damages from the said Lem Brooks, the Andress Motor Company, Inc., and the Fidelity & Casualty Company of New York. The latter is the liability insurer of the offending truck.

As stated in the brief of defense counsel: "The answer admits that plaintiff was injured as the result of the fall from the ladder but denies that his fall was due to any negligence on the part of Lem Brooks and denies that Lem Brooks was negligent in any manner. The answer further alleges that the plaintiff's injuries were due to his own fault and negligence in several respects, chiefly relating to the place where he located the ladder and the manner in which he balanced himself on it so that a slight jolt to the ladder had the effect of throwing him to the ground and to the failure of the plaintiff to pay any attention to the passing traffic so as to brace himself against falling when a car should pass close to the ladder."

The American Mutual Liability Insurance Company, which is the compensation insurer of the H. H. Bain Roofing Company, intervened in the suit. It asks to be favored with a judgment, " * * * for the amount of compensation paid to plaintiff and that may be paid during the pendency of this suit, and for the hospital and medical expenses paid on plaintiff's behalf by reason of said accident, and to a reasonable attorney's fee, to be fixed by the Court, to be paid by preference and priority out of the damages recovered herein from the defendants, and that the damages recovered in excess of said amounts should be credited as compensation as between plaintiff and intervenors, as provided in Act 20 of 1914 and amendments thereto."

After trial there was judgment in favor of plaintiff and against the named defendants, in solido, in the sum of $5500. Also, judgment was rendered in intervenor's

favor in the sum of $250 for hospital and medical expenses incurred by it on behalf of plaintiff, in the further sum of $250 for attorney's fees, and for such additional amount that is necessary to provide reimbursement for all compensation paid; all of said sums to be paid to intervenor by preference and priority out of the amount recovered by plaintiff.

Defendants appealed from the judgment. Plaintiff has filed an answer requesting an increase in the damage award.

The accident occurred in a paved alley, 19 feet in width, that lies between and runs parallel with Crockett and Cotton streets in the city of Shreveport, Louisiana. Intersecting those streets and said alley is Louisiana street. For the purpose of this discussion we shall assume that Louisiana runs north and south while the alley and its paralleling streets extend east and west. Under this assumption Crockett street is north of the alley and of Cotton street. Facing Louisiana street and extending west along the north side of the alley is a brick building known as the Anton Apartments. Behind this and farther west on the north side of the alley is the rear entrance of the building occupied by defendant Andress Motor Company, Inc. This structure fronts north on Crockett street. Directly across the alley from the Anton Apartments is the rear of the Arlington Hotel building. The front of this hotel is on Cotton street, while its east side borders Louisiana street.

About noon on the 14th day of January, 1938, plaintiff was standing on a 28-foot extension ladder performing flashing work around windows on the south or alley side of the Anton apartment building. He was operating between the second and third floors. The base of his ladder rested in the alley a short distance west of the building's front and a few feet away from its side, while the top was against the brick wall.

Earlier in the morning of the mentioned day the Andress Motor Company, Inc., sent Lem Brooks, its employee, to Alden Bridge, Louisiana, to obtain and bring in a disabled truck. Brooks proceeded to his destination in the company's wrecker truck which was equipped with a crane. After arriving there, the front end of the damaged machine was hoisted and lashed to the back end of his vehicle, while its rear wheels remained on the ground. Each truck possessed dual rear wheels. The towing process was then begun. While traveling on a straight course, the rolling wheels of the trailing truck followed in the tracks of the wrecker, and the combination of the two was in effect a six-wheel vehicle.

Brooks ultimately reached Louisiana street in the City of Shreveport and traveled south thereon. On approaching the place of its intersection with the alley in question, he steered his truck somewhat to the left and then effected a wide curve to the right, or toward the west, into the alley. His intention was to enter the rear of his employer's business establishment. The machine proceeded in double low gear at a speed of approximately 2½ miles an hour. A low-hanging fire escape, that was attached to the rear end of the Arlington Hotel building and protruded into the alley about 4 feet at a point directly opposite the ladder on which plaintiff stood, was successfully avoided. The ladder was noticed by Brooks as he was passing it. According to his testimony, "I seen the ladder first as I got beside it, as I was passing the fire escape. I had cleared the front end of the wrecker coming in and as I went by the fire escape I looked over and seen that ladder standing up but I couldn't see up the ladder."

At about this time he also observed an approaching automobile that had been backed from a parking place beneath the Arlington Hotel. To provide passing space for the oncoming machine, he directed his truck to the right and continued his driving. He had traveled about 12 or 15 feet in that direction when he realized that the trailing vehicle was about to strike the ladder. The brakes were then applied and the pulling truck stopped instantly. "It didn't slide a wheel." The disabled machine, however, ran forward about 4 inches and its right rear wheel struck the ladder, causing plaintiff, who was working near its top, to be dislodged therefrom and to fall to the pavement. It would not have been touched if a straight course had been continued, or if the brakes had been applied when the driver first noticed it beside his truck.

■ It is unnecessary for us to determine whether or not plaintiff was negligent in the methods employed by him for carrying on his work. Even if it be conceded that his ladder was located at an unsafe place, that he was improperly bal-

anced thereon while working, and that he failed to give attention to traffic using the alley, his negligence in those respects was a remote cause of the accident and injuries. The immediate and proximate cause was the truck driver's negligence in failing to stop his machine on becoming aware of the presence of the ladder, or to otherwise avoid striking it. Considering the speed that he was employing and the effectiveness of his brakes, he had ample opportunity to prevent the occurrence after seeing the object on which plaintiff was standing, and it was his legal duty to do so. The last clear chance was with him.

■ The Louisiana Supreme Court, in the case of Rottman v. Beverly, 183 La. 947, 165 So. 153, 156, stated as follows: "But if a plaintiff negligently puts himself in a place of danger and his negligence and danger are actually discovered by the defendant, then there devolves upon the defendant a duty which intervenes or arises subsequent to the negligent acts of the plaintiff, and that duty is to save the plaintiff from the consequences of his negligent acts if he can. The first duty of those who operate engines or motor vehicles is to keep a sharp lookout ahead to discover the presence of those who might be in danger. If they perform that duty and discover that some one is in danger, then a second duty arises, and that is to use every possible available means to avert injury. If the defendant fails to perform that duty, his negligence in that respect is regarded as the proximate and immediate cause of the injury and the negligence of the plaintiff in putting himself in a place of danger, the remote cause. In such cases the last clear chance doctrine applies even though plaintiff's negligence continues up to the accident."

The doctrine announced in the Rottman case was reaffirmed in Jackson v. Cook, 189 La. 860, 181 So. 195.

■ The steering of the truck combination to the right and against the implement that supported plaintiff is not excused by the fact that it was in the path of the above mentioned oncoming automobile. The latter machine was obviously traveling at a very slow rate of speed for it had started from a point approximately 50 feet west of the ladder and fire escape. With reference to that car, Brooks states: "The alley was clear as I came in but as I looked up the alley there was a car backing out of this doctor's place underneath the Arlington Hotel. They park their cars back there." No emergency is shown by the evidence to have existed. It does not appear that a collision was imminent. On the contrary, the record furnishes the reasonable conclusion that the approaching automobile would and could have stopped, without the occurrence of a mishap, if the truck had done likewise.

■ The fact that plaintiff was working above Brooks' range of vision, as the evidence establishes, and was not actually seen by the latter, provides no justification for the unfortunate occurrence. A ladder is an appliance ordinarily and commonly used by a person to permit his ascending to a desired height. The presence of such an article against a building, as in the instant case, usually provides the impression that someone is engaged in work thereon or otherwise using it. When Brooks observed the ladder standing beside his truck, a legal duty devolved on him to make certain that it was unoccupied, as he could have done, before driving in close proximity to it.

■ The injuries resulting to plaintiff from the fall to the pavement were serious and painful. Regarding these, his attending physician testifies: "I saw him in the North Louisiana Sanitarium and the history was that he had fallen off of a ladder and suffered several injuries. Examination showed him to have a contused wound of the left side of the face and apparently a fracture there involving the left orbit; floor of the left orbit. There was a lacerated wound to the lower lip, both outside and inside; a sprain of his left wrist; a sprain of his right ankle; a lacerated wound of his right knee; fracture of the left astragulus; sprain of the left ankle; loosening of several of the teeth of the left upper and lower jaw."

An examination of his teeth was made by his dentist approximately twenty days after the accident, and it was then found that eleven of them were loose and extremely sensitive to touch.

Plaintiff was in the hospital for fourteen days. The next ten days were spent in bed at his home. Crutches were thereafter used for about five or six weeks. These were discarded in favor of a cane.

When the trial of the case was held, this being three months and fourteen days after the accident, plaintiff was enduring

a numbness of the face. He had not completely recovered from his injuries and was still suffering much pain. According to the medical expert testimony, considered as a whole, his impaired condition was not considered permanent, but additional time was necessary for a complete recovery to be effected. The following testimony of the aforementioned attending physician is deemed pertinent:

"Q. Doctor, this accident happened in January, as you have stated, and this is only April. Is it not a fact that the time between the date of the injury and today has not been sufficient to permit a complete cure of the man? In other words, that he is in the process of getting well now and that it will take still sometime further for him to get entirely well? A. That is correct.

\* \* \* \* \* \* \*

"Q. Doctor, taking everything into consideration would you not say that the treatment that this patient has received from the various doctors, with the exception of the dentist, as to whom I understand you are not prepared to testify, has been successful so that he is on the way to normalcy? A. Yes, I would say that."

The specialist who performed an operation in connection with the face injury was of the belief that the face showed no disfigurement that would attract the attention of persons, from the standpoint of the casual observer, with whom he came in contact.

An examination by the dentist on the day immediately preceding the trial showed that all of the teeth, except four, had become tightened. The excepted ones, located in the upper front part of his mouth, were either dead or dying and this condition necessitated their extraction and the substitution of a bridge.

Plaintiff is married, is 27 years of age, and has been a sheet metal worker for approximately ten years. His employment has been regular. The usual weekly wage that he received was $44. His average earnings for the three years preceding the date of the accident was $38.28 per week. The trial judge, as before stated, fixed the quantum to which plaintiff is entitled herein at $5500. The award does not appear to be disproportionate to the damages sustained, and we shall not disturb it.

The judgment is affirmed.