This is an action brought by plaintiff-appellant, Central Surety and Insurance Corporation, against defendants, Mrs. Charles J. Van Trier and her automobile liability insurer, National Surety Corporation, for the sum of $168.47. Plaintiff carried the workmen's compensation insurance covering the employees of Dixie Machine Welding and Metal Works, of New Orleans. On May 22, 1947, Horace Blakesley, an employee of the welding and metal works, was injured in an accident, and the compensation insurer paid him the amount involved in this suit. Plaintiff seeks reimbursement from Mrs. Van Trier and her insurer, alleging that Blakesley's injuries were caused through the negligent operation of an automobile by Mrs. Van Trier. Plaintiff pitches its claim on Sec. 7 of Act 20 of 1914, as amended, Dart's Gen. Stat. Sec. 4397, which provides in substance that any employer having paid or become obligated to pay compensation under the provisions of the Workmen's Compensation Act may bring suit against any third party by whose fault the occurrence giving rise to the claim for compensation was brought about, to recover any amount which he has paid or become obligated to pay as compensation to any injured employee or his dependent, and on Sec. 23 of the act, as *Page 276 
amended, Dart's Gen. Stat. Sec. 4412, which contains the proviso that a workmen's compensation insurer is subrogated to all the rights and actions which the employer is entitled to under the Workmen's Compensation Act.
After a trial on the merits in the lower court, plaintiff's suit was dismissed, and it has taken this appeal from the judgment.
The place of business of the Dixie Machine Welding and Metal Works is located on the uptown-lake corner of Tchoupitoulas and Poeyfarre Streets, and the entrance is on Tchoupitoulas Street about 50 feet from Poeyfarre Street. About 20 feet inside the entrance there is a machine called a "planer" through which lumber is passed flatwise towards the front of the establishment. At the time of the accident a board three inches thick, eight inches in width, and 40 feet in length, weighing between 200 and 250 pounds was being passed through the machine at the rate of about 10 feet per minute, and all but a few inches had come out of the machine, and the end which had passed through protruded beyond the door, across the sidewalk and above the street. As it was necessary to support that portion of the board, three employees held it up. One Prechtl was standing inside the shop about 10 feet from the machine. The board was 7 feet out into Tchoupitoulas Street, and Sprague was standing near its end supporting it on his right shoulder, partly facing traffic coming up Tchoupitoulas Street. Blakesley, the employee who was injured, was standing in the street about three feet from the curb, with the board resting on his left shoulder, facing the planer.
While the board and the workman were in the positions above indicated, Mrs. Van Trier, who "wasn't going very fast," approached in her coupe automobile travelling in an uptown direction on Tchoupitoulas Street. Sprague states that when he first noticed her car it was a sufficient distance away to permit its driver to stop or "pull out further," and that he gave the driver a "stop" signal which he described as "the regular traffic cop signal." He states that Mrs. Van Trier paid no heed, but continued onward without altering her course.
The front part of the automobile passed safely, but the end of the board came into contact with the top rear part of the right door of the automobile and was pulled forward in the direction in which the car was travelling. It then became dislodged and swung back, striking Blakesley about the head and causing the injuries for which he was paid the compensation. Defendants are sought to be held liable on the ground that Mrs. Van Trier should have seen the moving board and stopped to have avoided striking it.
Sprague states that he gave no warning to Blakesley of the approaching automobile, nor did he give any signal to the operator of the planing machine. It is admitted that there was no red flag or other warning device placed on the end of the board, nor was there any barricade in the street to warn approaching traffic that it would be dangerous to pass around its end.
Mrs. Van Trier's testimony is to the effect that she saw the piece of lumber, and also the men standing in the street. She noticed that Sprague was looking at her automobile, but she denies that he gave a signal, and it was her impression that the men intended to carry the lumber across the street and had stopped to await the passing of her automobile before proceeding. It is conceded that her automobile was moving slowly, and she stated that had she known the board was being propelled by a machine she could and would have stopped, but that not noticing or knowing of its movement she continued on her regular course, believing that she could safely pass. A passenger in the automobile also testified that she did not perceive the movement of the board.
[1] It is true that Mrs. Van Trier, in attempting to pass, drove her automobile very close to the end of the board, but it is obvious that whereas the front part of the body of the car had passed without mishap, had the board not continued in motion the accident would not have resulted. Sprague testified that he did not expect the car to hit the board, or that it would strike the car. We cannot say that Mrs. Van Trier was guilty of negligence in connection with the accident. She was in a moving *Page 277 
vehicle, and the slight motion of the board (one foot each six seconds) was not apparent to her, and she could not have been expected to possess knowledge that it was not stationary. Were it not for its movement, slight though it was, there never would have been contact between it and the automobile. If there was negligence, it is to be assessed not against Mrs. Van Trier, but against the employees of the Dixie Machine Welding and Metal Works, as their conduct was inexcusable in permitting the lumber to protrude into heavily trafficked Tchoupitoulas Street without a barricade or other warning to passing traffic.
[2] In the alternative, the petition alleges that if the employees of the welding and metal works were guilty of negligence, nevertheless Mrs. Van Trier is responsible because she had the last clear chance of avoiding the accident. In support of this alternative plea, counsel has cited several cases wherein the last clear chance and the discovered peril doctrines were discussed and applied, but the cited cases are all dissimilar to the instant case, and can have no applicability. In most of them the drivers of automobiles were held liable for running down pedestrians. Of the cited cases the nearest, from a factual standpoint, is Streetman v, Andress Motor Company, La. App., 189 So. 321. In that case a truck driver was condemned of negligence for running into a ladder upon which plaintiff was standing, plaintiff being precipitated to the ground and suffering injuries. It was held that the immediate and proximate cause of the accident was the truck driver's failure to stop his machine upon becoming aware of the presence of the ladder, or to otherwise avoid striking it.
But in the case before us, we are not dealing with an automobile having run into a stationary object. Moreover, the automobile did not run into anything; it was the other way around — the board struck the automobile. Under the circumstances it would be unreasonable to say that Mrs. Van Trier is to be cast on the theory of the last clear chance doctrine, in attempting to pass a thing which she thought was stationary, and Which she would have safely passed had it not been for a slow and, to her, an imperceptible movement of the thing.
Counsel for defendant has cited the case of Fatjo v. Boulet Transportation Company, 12 La. App. 50, 125 So. 178, 179, in which a truck hit some planks protruding over the curbing from a wooden walk or platform which had been constructed for the purpose of covering a freshly paved sidewalk, injuring the plaintiff. The driver of the truck was absolved from the charges of negligence, and the following observation made by the trial court, which was quoted in that case with approval by us, is interesting:
"The projection of the planking ten or twelve inches from the curb was such an unusual, unheard of and unforeseeable thing, that no duty was imposed on this negro to look out for projecting planks.
"* * * he had no more reason to believe those planks were protruding there than he had to believe a bomb was placed ten inches from the curb of the gutter and he had to watch for that bomb."
For the reasons assigned the judgment appealed from is affirmed.
Affirmed. *Page 278