Shortly before 8 o'clock on the night of January 28, 1939, plaintiff, Paul Tauzier, sustained serious physical injuries as the result of being struck by an automobile driven by William Landwehr, defendant. The accident occurred on Gentilly Boulevard very near to the corner of Aubry Street. Gentilly is a broad, two lane boulevard, having in the center a rather narrow neutral ground raised above the surface of the two driveways.
At that corner the Fair Grounds race course extends alone one side of Gentilly Boulevard for several blocks and Aubry Street commences at Gentilly opposite the said race course, and runs at about a right angle to the boulevard.
Defendant had been driving his car down Gentilly on the proper side and approximately 4 or 5 feet from the neutral ground. Tauzier had been on the Fair Grounds side of Gentilly at a point about 150 or 200 feet below the Aubry Street intersection, and it was his purpose to cross the boulevard and to then walk out Aubry Street to his home. He had crossed one roadway and had reached a point probably 3 or 4, or perhaps 5 feet from the neutral ground on the other side when the accident occurred. It is his contention that he was crossing at the corner and that he had not passed over the neutral ground but had walked by the end of it and had stepped into the other driveway when Landwehr, coming at a terrific speed, struck him and knocked him down, after skidding for a distance estimated at from 45 to 60 feet.
Landwehr is certain, however, that Tauzier was not crossing at the corner, but, that, on the contrary he had walked across the neutral ground 40 or 50 feet below the Aubry Street intersection and that as he, Landwehr, approached at a reasonable speed, Tauzier stepped from the neutral ground into the path of his car, or into the left front fender when it was no longer possible for the car to be stopped.
In the District Court there was judgment in favor of the defendant and plaintiff has appealed.
Defendant's contention as to the facts of the occurrence is clearly set forth in his testimony: "* * * In coming out Gentilly, I proceeded down Gentilly, my next stop being on Belfort Street. After I passed Aubry Street, I noticed a man standing on the neutral ground, which almost every day a person will stand on the *Page 773 
neutral ground or sidewalk or anyways along the street, and if they see a car coming they will wait until you pass to walk over afterwards, which I thought this man would do. On the contrary, when I got on the man he stepped off in the path of my car."
Plaintiff's version is somewhat different. He was asked whether he had stepped upon the neutral ground and was quite certain that he had not. He answered: "It didn't have no sidewalk, and if I would step on the neutral ground I would have to step on the grass and it is against the law of the parkway commission."
He added that he had walked alongside the end of the neutral ground and then said: "When I got even with the neutral ground I saw when I got about over, I saw this man coming with his automobile about three-quarters of a block down the street, and not knowing how fast he was coming, I just seen the lights and couldn't judge how fast he was coming, I thought I could make it and when I got about five feet out I heard the screech of his brakes and then he hit me."
In number of witnesses the evidence preponderates heavily in favor of plaintiff, but in spite of this the District Judge found the facts as recited by defendant. He commented on the numerical superiority in favor of plaintiff, saying: "Insofar as the number of witnesses is concerned, the Plaintiff has the preponderance of the evidence, but most of these witnesses showed an overzealousness to aid the cause of the plaintiff. They were guilty of great exaggeration in the rendition of their testimony."
Since there are only questions of fact involved, and since the trial court has resolved these questions in favor of defendant, and, in addition, has commented upon the unreliability of the testimony given by most of the witnesses for plaintiff, it is obvious that there should be no reversal unless it is quite manifest that the District Judge was wrong in his conclusions. We have examined the record and find no reason to believe that he was in error. On the contrary, there is much which in our opinion justifies his view that there was gross exaggeration in the evidence submitted on behalf of plaintiff. We find, for instance, that one witness states that when the plaintiff was struck, he was actually thrown 45 feet from the automobile, and this in spite of the fact that the automobile stopped just at the point at which the plaintiff was struck. The witness said: "He did not skid after he hit Mr. Tauzier, he just stopped right there and Mr. Tauzier was knocked 45 feet."
Two of plaintiff's most important witnesses say that they were on the front porch or front steps of a house on the corner, and that they saw the entire accident and that they remained at the scene for sometime and that they made measurements of the skid marks made by defendant's automobile, and yet these two witnesses did not make themselves known to the police, who, when they arrived on the scene, attempted to locate all persons who had seen the accident. Most significant is the undeniable fact that after the accident plaintiff was lying in the street about 45 or 50 feet below the intersection. We say this is significant because we think that it indicates that he must have been crossing the neutral ground and could not have been at the corner of Aubry Street. We think it significant also that it was his purpose to go from the point at which he had been, which was 150 or 200 feet below Aubry Street, to the corner of Aubry Street on the other side of Gentilly. His direct course would have been across the neutral ground some 45 or 50 feet below the corner, and this is the point at which he was found after the occurrence.
The overzealousness of plaintiff's witnesses becomes very manifest when we analyze their testimony concerning the skid marks. In the first place, they state that they were so well burned into the pavement that they were plainly visible for more than a week and a half afterwards, and yet the police did not notice them and were not told of them when they arrived. These witnesses say that they measured the skid marks and that they cannot be mistaken as to their length, and yet it developed that on the night of the accident they merely made estimates and did not accurately measure the distance until the morning of the trial, more than two years after the occurrence, and that even these actual measurements were made by recollecting where the marks commenced and where they terminated. And when we compare the testimony given in the Criminal Court with that adduced when this case was on trial, we find that their recollections either on the one occasion or on the other were not good since the testimony given at the two trials cannot be reconciled. *Page 774 
It is unnecessary that we go into more detail in discussing the evidence. We think it quite obvious that the District Judge was not manifestly in error in concluding that the plaintiff, himself, was at fault and that there was no negligence on the part of defendant.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.
SIMON, J., takes no part.