At about 10:30 o'clock on the night of September 18, 1945, plaintiff, Edward Atchley, was struck by a taxicab of the defendant partnership, Toye Bros. Yellow Cab Company, and sustained rather severe physical injuries.
Alleging that the accident had been caused by negligence on the part of the driver of the taxicab and that he himself was in no way at fault, Atchley brought this suit in the Civil District Court for the Parish of Orleans praying for judgment for $8,153.02 against the said partnership. Though the allegation is made that the partnership is composed of Frank E. Toye, George A. Toye, Joseph Toye, and Paul W. Toye, judgment was not prayed for against the individual members. However, the individual members, together with the partnership filed exceptions and an answer.
They denied that there was any negligence on the part of their employee, averred that the accident had been caused entirely by negligence of Atchley himself in stepping from the neutral ground into the street, directly in front of the taxicab, when there was not sufficient time or space for it to be brought to a stop, and averred that, in the alternative that it appear that there was any negligence on the part of their employee, the proximate cause of the accident was the contributory negligence of plaintiff himself "in jay walking and attempting to cross Tulane Avenue at a point outside of the pedestrian lane," and "in creating a sudden emergency by coming from a place of safety directly into the path of moving traffic on the lower roadway of Tulane Avenue, without first ascertaining whether there was traffic approaching, especially in view of the fact that the cab was plainly discernable with its headlights in operation."
There was judgment dismissing plaintiff's suit, and he has appealed.
The accident occurred as Atchley was attempting to cross Tulane Avenue from the upper to the lower side at or near the corner of Loyola Avenue. The vicinity in which the accident occurred may be described as follows: Tulane Avenue is a double driveway thoroughfare, in the center of which there is a raised neutral ground. Along the neutral ground in this particular block there are two street car tracks. On the lower side of Tulane Avenue there is a very short block, on the west end of which is a bus terminal depot. On the east end of this block Loyola Avenue crosses Tulane Avenue, and the Tulane Belt street cars, in their route from the business section of the City, pass up Loyola Avenue to Tulane Avenue and turn right or west on to the neutral ground of Tulane Avenue. In that block the neutral ground is curtailed at the Loyola Avenue end, so that it does not extend all the way to a line which would form the extension of the curb line of Loyola Avenue; that end of the neutral ground being set back about thirty or thirty-five feet from the said extension of the curb line of Loyola Avenue.
Atchley had arrived at the bus station a short time before the accident, and it was his purpose to cross Tulane Avenue and walk along the sidewalk of Loyola Avenue to a street car stop so that he might board a Tulane Belt car and go to Broad Street and there transfer to a Gentilly bus. He had crossed the upper roadway of Tulane Avenue and had also crossed the neutral ground, but he was struck by the taxicab while attempting to cross the lower roadway. It is his contention that the taxicab had been driven up Loyola Avenue at a speed of thirty to thirty-five miles an hour, had turned suddenly to its right into Tulane Avenue, and had struck him while he was several feet away from the neutral ground and when there was no longer an opportunity for him to step back out of the way of the cab or to continue to the sidewalk. *Page 890 
It is the contention of the defendant, on the other hand, that the cab had not gone up Loyola Avenue to Tulane Avenue, but had gone out Rampart Street several blocks to the east of Loyola Avenue and had turned into Tulane Avenue from. Rampart Street, and had thus been on Tulane Avenue for several blocks and for some time before Atchley was struck, and, that the taxicab was in plain view of Atchley, when he negligently stepped from the neutral ground directly into its path after it was too late for the operator of the cab to bring it to a stop, or to swerve it to the right in an effort to avoid striking him.
The only persons who claim that they actually saw the occurrence are Edward Atchley, the plaintiff, Robert Bache, the opeator of the taxicab, and Sidney Songy, an employee of another taxicab company, who says that he was on the sidewalk on the upper side of Tulane Avenue near the entrance of the bus station, and that he was looking directly toward the taxicab when it turned from. Loyola Avenue into Tulane Avenue.
Atchley admits that he knows very little about the occurrence; that he did not see the taxicab at all and does not know from which direction it came, although he says that before stepping into the street, he looked in both directions and saw no vehicle which was sufficiently close to prevent his crossing in safety.
The statements of Songy and Bache cannot be reconciled. Although Bache says that he turned into Tulane Avenue at Rampart Street several blocks before reaching Loyola Avenue and then proceeded out Tulane Avenue, Songy states that he saw the taxicab turn into Tulane Avenue from Loyola Avenue only a few feet before it struck Atchley, and after Atchley had proceeded some distance into the roadway of Tulane Avenue.
During the course of the trial it developed that Songy, several years earlier, had had a rather serious criminal charge made against him in the United States District Court and had pleaded guilty. It was also shown that Judge Viosca, before whom this case was tried, had been the United States Attorney when Songy had pleaded guilty in the United States District Court, and it appeared, too, that Judge Viosca placed little or no credence in the testimony of Songy given in the case at bar. Because of this rather unusual situation, counsel for plaintiff argue at length that we should not reject the testimony of Songy, but should give it just as much weight as we would give to that of any other witness. In their brief they say that the evidence concerning the plea of guilty in the criminal charge in the United States District Court should not have been admitted, and they add: "Had this District Court Judge not had a personal knowledge of the witness prior to the trial of this case, this evidence would not be in the record today. It should be likewise evident that in spite of every sincere effort he might make, the District Court Judge could not consider the testimony of this witness as he would have considered the testimony of a stranger. In apparently disregarding the testimony of Songy because of the latter's violation of a federal statute while he was acting as the U.S. Attorney, this District Court Judge committed reversible error."
[1] We are unable to say from the record that the District Judge's reason for not believing Songy was based on his previous knowledge that the witness had pleaded guilty in the other court, and even if it be conceded arguendo that under such circumstances a district judge should give full credence to the statements of such a witness, we are convinced from the record that the witness Songy is entirely unworthy of belief, and this for many reasons. He says, for instance, that Bache turned the corner to his right at a speed of thirty or thirty-five miles an hour without the slightest reduction in speed. This would have been practically impossible, as it appears from the record and from the photographs which are in the record that the two streets meet at a sharp right angle, so that the taxicab would have had to turn a sharp right angle and enter a rather narrow roadway at a speed of thirty or thirty-five miles an hour. Furthermore, in order to prove negligence on the part of Bache Songy said that he was looking at Bache and that he, Bache, in driving the taxicab was "looking on the lefthand side instead *Page 891 
of the right." When asked what he meant by this, he said: "Towards the river." When we realize that the headlights of the taxicab were burning and were shining directly towards Songy, we conclude that it was absolutely impossible for him to have seen the driver of the taxicab and to have noticed that he was looking to his left and not to his right.
Songy says, too, that as soon as he saw the accident he crossed the street from the bus station and remained at the scene for some time, and that the police arrived and made an investigation, but did not talk to him so he did not talk to them or give them his name. He makes this statement in explanation of the fact that the police did not secure his name as a witness. Neither Bache nor any one else remembers having seen Songy at the scene of the accident.
It also appears from the testimony of Songy himself that at that time there was considerable "friction" between the taxicab company for which he then worked and the Yellow Cab Company.
For these and other reasons appearing in the record, we find ourselves unable to believe that Songy's statement gives a correct picture of the occurrence.
In spite of the fact that Atchley says he was knocked unconscious and did not recover consciousness until some time later after he had reached the hospital, the record shows that as a matter of fact the police and others talked to him at the scene of the accident and obtained from him considerable information concerning himself.
He says that all that he knows about the accident is that he looked carefully and saw no taxicab coming and that after pausing on the edge of the neutral ground and looking in Tulane Avenue towards the river or east, he stepped into the street. He said: "I stepped down off this walk into the street and started across. Just how many steps I had taken I don't know, and I did not know anything after that."
And he added: "Whether I took two or three steps I don't know."
Bache is positive that his cab had been on Tulane Avenue since it turned into that avenue at Rampart Street, and that as he approached Loyola Avenue he was driving slowly. He gives two reasons for his slow speed: first, that he knew that at that corner the Tulane Belt cars come up Loyola Avenue and turn into Tulane Avenue across the roadway on which his taxicab was being driven and that, therefore, there was danger that a street car might emerge, and second, that he intended to go to the bus station and, therefore, to cross the neutral ground of Tulane Avenue to his left at the next corner which, because of the short-distance away.
Bache says that he saw Atchley, that he looked in the direction of the taxicab and stopped as he reached the edge of the neutral ground and that he, therefore, felt that Atchley had stopped to let the cab go by, but that just before the cab reached him, he stepped into the street and was struck.
That the speed of the taxicab could not have been great is evidenced by the fact that, although the brakes were applied in the emergency, it went only a very few feet after they were applied and stopped with practically no skid marks.
[2] We conclude that Atchley paused or hesitated as he reached the curb of the neutral ground and that he looked into the direction from which the taxicab was approaching, and that as the taxicab, at a reasonable speed, reached a point almost opposite where he was standing, he stepped into the roadway and after only one or two steps was struck.
The facts as we find them do not bring the case within the doctrine announced in Rottman v. Beverly, 183 La. 947,165 So. 153, or within the doctrine of Jackson v. Cook, La. App.,176 So. 622. In Rottman v. Beverly the plaintiff was seen in time for the driver of the car to have stopped, and in Jackson v. Cook the plaintiff should have been seen in time. Here the plaintiff was seen in time but he gave every indication of having seen the approaching taxicab and of his intention to let it go by.
[3] This accident apparently resulted from one of those mental lapses from which all of us at times suffer. It is not unusual for the operator of an automobile or street car to see a pedestrian approaching the path on which the vehicle is being operated and *Page 892 
giving evidence that he, the pedestrian, is aware of the approach of the vehicle and that he intends to stop to let it go by. Under such circumstances it is not negligence for the operator to continue on his course, as he is warranted in the assumption that the pedestrian sees the vehicle and intends to stop and let it go by or, having stopped, will remain stationary until it has passed.
As we said in Fontenot v. Freudenstein, La. App., 199 So. 677, 680, "* * * Often, in crossing a street, a pedestrian, seeing a car approaching and about to pass in front of him, continues on his course until within a few feet of the path of the car and then stops to allow it to go by."
The same thought is expressed in rather picturesque language of a witness, a motorman, who, in Tauzier v. Landwehr, La. App., 6 So.2d 772, said: " '* * * After I passed Aubry Street, I noticed a man standing on the neutral ground, which almost every day a person will stand on the neutral ground or sidewalk or anyways along the street, and if they see a car coming they will wait until you pass to walk over afterwards, which I thought this man would do.' "
Almost an indentical situation was found in the case of Mrs. Lucy Hopkins Lagrand, widow of Lagrand v. Fortune A. Dugan, La. App., 196 So. 564, 566, in which the defendant, an automobile driver, was held not to have been negligent in failing to anticipate that a pedestrian crossing the neutral ground would step into the street. Referring to the pedestrian, we said: "* * * The fact that he was on the neutral ground conveyed no intimation of his intention to cross the roadway and we are of opinion that Dugan was justified in believing that Blachess would wait there until his car had passed."
The situation is quite different from that which is presented where there is something about the appearance or condition of the pedestrian to indicate that he is unaware of the danger, or where the operator of the vehicle is given no indication that the pedestrian is aware of the danger. But we see no reason to hold such a driver negligent where, as here, the pedestrian, looking towards the vehicle and pausing before stepping into the street, indicates not only that he is aware of the danger, but that he will remain stationary and permit the vehicle to pass.
There is considerable disagreement over the question of whether Atchley was crossing at a regular pedestrian crossing, or at a point some twenty or thirty feet nearer the center of the block. We think that the evdence to the effect that he was not on the regular pedestrian lane slightly preponderates, and we believe that in all probability he had taken a diagonal route from the bus station towards the downtown lake corner of Tulane and Loyola Avenues and that, therefore, as he stepped into the street, he was several feet west of the regular crossing; in other words, several feet nearer the center of the block. But we do not see that this is of any great importance. The question of whether a pedestrian is crossing a street at a proper point is interesting only if the driver of the vehicle, which ultimately strikes him, is unaware of his presence and contends that he had no reason to expect a pedestrian at such an unsual place. But where the pedestrian is clearly seen by the operator of the vehicle, as here, it is of little importance that he, the pedestrian, may have been crossing at some point other than the regular pedestrian path. The important thing here is that the operator of the cab saw Atchley and was justified in believing that Atchley saw the cab and had stopped to let it go by.
We find no negligence in the driver of the taxicab.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed. *Page 893