JANVIER, Judge.
Robert J. Bechtel, a pedestrian fifty-two years of age at the time of the accident from which this suit results, sustained serious physical injuries, including a fracture of both bones of the lower third of the right leg, when he was struck by an automobile owned and operated by one of the defendants, Ramon A. Oriol, III, at about four o’clock on the afternoon of September 16th, 1947, at the corner of Poydras and Baronne Streets, in New Orleans. He brought this suit for damages against Oriol and General Accident Fire and Life Assurance Corporation, Ltd., the liability insurance carrier of Oriol, praying for soli-dary judgment against both defendants in the sum of $12,375.00, and alleging that the accident resulted solely from negligence on the part of Oriol.
He alleged that he was attempting to cross Poydras Street from the uptown river corner to the downtown river corner, and that just after he had passed the center line of Poydras Street he was struck by the automobile driven by Oriol, which was on its way in a direction from the river towards the lake, and that Oriol was negligent in that he failed to have the automobile under control; in that he failed “to have a lookout for pedestrians crossing the said Poydras Street,” and failed “to avail himself of the last clear chance to avoid the accident,” and principally in that he “failed to obey the traffic signal at the intersection of Poydras and Baronne Streets.” He alleges also that Oriol was negligent in running into him since he “was walking across the street, and could have been seen for a great distance * * *.” It is charged that, in all of these particulars, Oriol violated the provisions of the City Traffic Ordinance No. 13,702 C.C.S.
The Board of Administrators of Charity Hospital of Louisiana at New Orleans intervened, alleging that, at the said hospital, the injured plaintiff had been treated and had been furnished medicines, X-rays, etc., to the extent of $222.00, and the inter-venor prayed for judgment against the defendants in that amount.
The defendants denied that Oriol had been negligent in any way and averred that the accident had been caused entirely by negligence of Bechtel, the plaintiff, in stepping into the street from the sidewalk on the upper side of Poydras Street and running across Poydras Street when the light in the direction in which he was running was red, and in running into the path of Oriol’s automobile without looking to see whether traffic was approaching; and in suddenly changing his direction “at a forty-five (45°) degree angle in the direction of the downtown lake corner of the intersection of Poydras and Baronne Streets, without regard to traffic lights or approaching traffic * * *.”
And the defendants further averred in the alternative that it should be found that Oriol was in any way himself at fault, the proximate cause of the accident was the contributory negligence of plaintiff himself.
From a judgment in favor of defendant, plaintiff has appealed. The intervenor has not appealed.
The record shows that the plaintiff, who was employed in a building on the upper *591 side of Poydras Street and one or two blocks nearer to the river than the corner at which the accident occurred, had received a message requiring that he return to his home “immediately”; that he had left his place of business and had walked along the upper side of Poydras Street to the uptown river corner of Poydras and Baronne Streets, and that it was his purpose to board an uptown-bound St. Charles Belt car which car line, at that time, was using Baronne Street on its uptown route.
The record further shows that the plaintiff stepped into the street and attempted to walk across — whether directly to the opposite corner or at an angle towards the lake-side downtown corner — is in dispute, and that just after he crossed the center line of Poydras Street, he was struck by defendant’s automobile which, as we have already said, was on its way out Poydras Street in a direction from the river towards the lake.
The most important question at issue is whether the traffic signal light at the time was green or favorable for plaintiff, or was green or favorable for Oriol.
It is interesting to note that neither plaintiff nor his principal witness, LaSalle, at any time in their extended statements said that, at the time of the occurrence, the light was green or favorable for plaintiff. Both repeatedly referred to the fact that the light had just changed to amber. In fact, Bechtel himself, although he refers to the color of the light at least six times in his testimony, at no time said that when he was attempting to cross Poydras Street the light was green or favorable to him. And it is interesting to note that LaSalle four or five times repeated the statement that the light was amber and on no occasion ’did he say that the light facing plaintiff was green.
It is also interesting to note that LaSalle, the principal witness produced by the plaintiff, on four occasions referred to the fact that a street car, which was on its way up Baronne Street, had stopped at the corner of Poydras Street before crossing, and was waiting because there was a red light facing that street car. Since the street car which LaSalle referred to was on its way up Baronne Street, if it was required to stop because a red light faced it, it is obvious that the plaintiff, going down Baronne Street, would also have been faced by a red light.
As against the testimony of Bechtel and of LaSalle which goes no further than to claim that the light had changed to amber and therefore it must have been about ready to change to green in favor of Bechtel, we find the testimony of the defendant Oriol, the testimony of an independent witness, Ferguson, and the testimony of a police officer, Walker, all three of whom stated positively that the light which faced the Oriol car as Oriol approached and was just about to enter the intersection was green or favorable.
Oriol says that as he approached the intersection, when he reached a point which was about 42 feet from the corner, he looked to his right at the traffic light, which was on the downtown river corner of the intersection, and noticed that it was green and realized that he was entitled to proceed. He says that at that time he was about at the corner of Carroll Street, which is 42 feet from the corner of Baronne Street, and he also estimated his distance from the corner at that time at about “ * * * from here to the back of the room * * It was shown that the' distance from the place at which the witness was sitting to the back of the court room was 42 feet, so that he must have been quite accurate in his statement that he looked at the light just as he passed the intersection of Carroll Street. He says that .at no time did he see the plaintiff until just before the accident and until he had covered about three-quarters of the distance from Carroll Street to the corner of Baronne Street, when he says “I saw a flash coming from the left to my right and I hit him with the left fender — the left bumper.”
Ferguson, a' disinterested independent witness, was also a pedestrian. It was his purpose to cross Baronne Street from the lower lake corner to the lower river corner. He says that he looked at the traffic light and found that it was green in the direction in which he wanted to go, which would have been green for Oriol, the defendant; *592 that. to his left there was a street car stopped because of the red traffic light which faced it; that he stepped across the street in front of the street car, looked to his left to see whether any automobiles were coming down Baronne Street and which might strike him, even though they would have been faced by a red light, and that just as he looked to his left he heard the squeaking of the brakes of the Oriol car and looked to his right and saw that the Oriol car had just struck the plaintiff and had dome to a stop partially across the riverside street car tracks on Baronne Street.
The other important witness produced by the defendants was Police Officer Walker. He was on the upper side of Poydras Street between Baronne and Dryades Streets. He says that he had just issued a violation notice to an automobile driver when he heard “the sudden application of brakes” and that he immediately looked up and saw that the Oriol car had struck the plaintiff and noticed “that the traffic light was green for Pojffiras Street”; in other words, he looked immediately after the accident and saw that the light was favorable for Oriol, and Ferguson had looked immediately before it and had seen that it was favorable for Oriol.
The testimony of these two witnesses, together with that of Oriol himself, when considered in connection with the fact that neither the plaintiff nor his principal witness at any time definitely said that the light was favorable for plaintiff, convinces us beyond the shadow of a doubt that the light was favorable to Oriol as he approached the crossing.
It is contended on behalf of plaintiff that, even if Oriol had a favorable light, he nevertheless should have seen that the plaintiff, Bechtel, had entered Poydras Street and was attempting to cross it, and •should have stopped his car in order to avoid striking Bechtel. It is claimed that Bechtel must have been in the street for several seconds, since Poydras Street is 49 feet wide, and since Bechtel had traversed more than half of that distance.
The evidence, however, conclusively shows that Bechtel was running, or at least walking at a very fast pace, and it is also shown that, in all probability before stepping'into the street, he had waited for an automobile going towards the river to pass and had then stepped out into the street from behind that automobile.
The evidence also shows, we think conclusively, that although Bechtel had started to cross the street in a direct line to the opposite corner, he had suddenly realized that because the street car, which was stopped on Baronne Street near the downtown lake corner, was waiting for the traffic light to change, he might, by hurrying, catch that street car, which it was his purpose to do, and that therefore he suddenly changed his course and continued not directly across Poydras Street, but at an angle of 45 degrees towards the downtown lake corner. The place at which he was found after the accident would indicate this, as would also the overwhelming weight of the testimony of the witnesses. The truth of the matter is that, shortly after the accident, Bechtel gave a statement to the police in which he himself made this admission. We quote from that statement:
“ * * * I was on the uptown river corner headed to the downtown river corner on Poydras and Baronne Sts. I ran to the middle of the street then changed my course to a (45) forty-five degree angle in effort to catch a street car which was about ready to move, I then heard the squeak of brakes and felt myself being jolted.
“I would state I have no desire to put the man at fault. By doing so I do not put myself to blame."”
It is very true that under the doctrine announced in Rottman v. Beverly, 183 La. 947, 165 So. 153, and extended in Jackson v. Cook, 189 La. 860, 181 So. 195, it is the duty of the driver of an automobile to notice a pedestrian who may have placed himself in a position of danger, and that even though that situation may have resulted from the negligence of the pedestrian, the automobile driver must ■ avoid him if, by exercising proper care, he can see him, should realize the danger and can stop in time to avoid an accident. It is interesting to note, however, that even if, when the plaintiff entered the street, there was nothing to obstruct the view of the *593 driver of the approaching automobile, neither was there anything to obstruct the view of the pedestrian and that the pedestrian himself, the plaintiff in this case, stated that he saw the automobile approaching and looked at least twice as it came toward'him. If he did so and if, as he said, he was walking and was looking towards the automobile, then the situation would be controlled by the doctrine announced in Fontenot v. Freudenstein, La.App., 199 So. 677, 680, which is to the effect that the doctrine announced in Rottman v. Beverly, supra, and extended in Jackson v. Cook, supra, has no application where the pedestrian is obviously aware- of the approach of the automobile and can easily stop and allow the automobile to pass.
What we held in the Fontenot case and what we adhere to is that an automobile driver, proceeding at a proper -speed who sees a pedestrian attempting to cross, which pedestrian is looking at the automobile and is apparently fully aware of its approach, may assume that the pedestrian, aware of the approach of the car, will stop before stepping into its path,. We said: “Often, in crossing a -street, a pedestrian, seeing a car approaching and about to pass in front of' him, continues on his course until within a few feet of the path of the car and then stops to allow it to go by.”
This doctrine was further discussed by us in Bordenave v. Texas & New Orleans R. Co., La.App., 46 So.2d 525. See, also, Jones v. American Mutual Liability Ins. Co., La.App., 189 So. 169.
Therefore, even if plaintiff’s statement is correct and he walked into the street, looking at least twice towards the approaching automobile, Oriol, had he noticed him, would have been justified in assuming that the pedestrian would not continue his course and step directly into the path of the approaching car. But, as we have said, that was obviously not what occurred in the instant case. It is very clear that the pedestrian stepped into the street and attempted to run across at an angle.
In addition to his statement given to the police we note his interesting statement, made on the trial of the case: “ * * * On the second time I looked, I was near the middle of the street, and whén I looked the second time, the car that I learned after was the car which hit me was the car I saw coming from Carondelet Street, between the corner of Carondelet and the front of the Telephone Company’s office on Poydras. And as I saw him, he was just about approaching the front, right in front of the Telephone Company, had he kept on coming this way and I was already walking kind of fast and I thought I would make a litle hurry step — that this fellow might not stop, not knowing anything, whether he was going to stop or not. Arid then I had a double thought. I thought, ‘Well, if I run over, he can’t get me.’ I knew he couldn’t get here in time to hit me, because I saw him. I was already just about in the middle, of the street. And just about, when I had that thought, I turned' my head again and I went to make that little run I had on my mind of making and I heard the squeak of brakes, and before the squeaks of those brakes stopped, I could feel myself just like somebody pushed me over * *
Our conclusion is that there was no fault on the part of Oriol and that the accident resulted -solely from the negligence of plaintiff himself.
Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.