REGAN, Judge.
Plaintiff, Josephine Steinel, surviving widow of Frank Schellang, instituted this suit against the defendant, Theodore L. Demuth, endeavoring to recover $131,200 for the death of her husband and injuries to herself, which occurred when the defendant’s automobile struck both her and her husband on the rainy night of May 18, 1953, as they attempted to cross Tulane Avenue at the intersection of S. Genois Street.
The defendant answered and denied any act of negligence, asserting that the plaintiff and her deceased husband walked into the side of his automobile, and this negligence was the proximate cause of the accident. In the alternative, the defendant pleaded the contributory negligence of the plaintiff and her husband.
From a judgment in favor of the defendant dismissing plaintiff’s suit, she has prosecuted this appeal.
The record reveals that, prior to this accident, Frank[1] and Josephine[2] Schellang, accompanied by the couple’s niece, Lorraine Duchman, her six-year-old son and Irwin Casería, were walking toward a bus stop located in the downtown river side of Tulane Avenue and S. Genois Street. Upon reaching the uptown lake corner of Tulane Avenue, Lorraine Duchman and her son walked across the avenue to the neutral ground. The Schellangs were behind their niece and her son. As they reached the center of Tulane Avenue, they were struck by the automobile driven by the defendant.
The foregoing factual resumé is in substance undisputed. Plaintiff, however, testified that her husband was slightly to her *646 right and behind her as they stepped into the roadway accommodating the Tulane Avenue traffic in the direction of the river. While her testimony is confused as to whether she or her husband looked to see if there was oncoming traffic before entering the roadway, at one point she stated that she did not ascertain whether a car was approaching in Tulane Avenue because her niece and son had crossed just before she stepped into Tulane Avenue. She said that she took a few steps into the avenue and “the car was right on top of me”, speeding “just like a bullet shot out of a gun”. Plaintiff asserts that she was struck first and therefore did not see the automobile hit her husband.
Defendant, on the other hand, stated he was traveling in the second or center lane of Tulane Avenue at approximately 25 miles per hour, moving in the direction of the river. He estimated that he first saw the Schellangs in the roadway when he was approximately 40 feet from them. At this point, he testified, he blew his horn, touched his brakes, and then saw Mrs. Schellang look at his vehicle and turn back toward the curbing, as though she were aware of his approach. Demuth stated that when his automobile was almost even with the Schellangs’ position, Schellang took his wife’s arm, propelling her toward the neutral ground into the side of the defendant’s automobile.
Moments after the accident, Schellang died, while his wife suffered innumerable injuries. Police photographs taken shortly after the accident reflected that the defendant’s automobile, a two-door sedan, was badly dented on the right door. The glass window was shattered, there were brush marks on the right front bumper and a nick on the chrome encasing the right headlight. Both the defendant and his wife testified that the right fender had been slightly damaged prior to the accident, and in substantiation thereof, they produced a receipted bill, showing the fender had been repaired. Both Demuths stated that the chrome encasing the right headlight had been dented slightly at the same time, but they refused to have it replaced because they were unable to afford it and since the efficiency of the light had not been impaired. While the brush marks on the bumper were unexplained, the whole tenor of the record reflects that they were not incurred as a result of this accident.
Lorraine Duchman, as we have observed hereinabove, was on the neutral ground when the automobile struck her aunt and uncle. In a deposition taken by the defense counsel two weeks before the trial, Lorraine Duchman positively denied that she had seen the accident occur since her back was turned at that moment. In order to impeach her assertion that she had not seen the accident occur, she was then shown a signed statement taken shortly after the accident by a desk sergeant, which contained an eyewitness account by Lorraine Duchman, claiming that the defendant’s vehicle was moving at a high rate of speed when he struck the plaintiff and her deceased husband.
Neither Lorraine Duchman nor Casería appeared as witnesses in the lower court; the judge thereof was informed by plaintiff’s counsel that Lorraine’s mother was seriously ill and that Caserta was mentally deficient. Therefore, the record contains the testimony of only two eyewitnesses to the accident, the plaintiff and the defendant.
Counsel for plaintiff insists that the defendant was negligent in not maintaining a proper lookout and in traveling at an excessive rate of speed in view of the inclement weather conditions. He maintains that the pedestrians were free from negligence, but should the Court conclude that their actions were negligent, then he urges that this negligence should not bar recovery, predicated on the hypothesis that the defendant possessed the last clear chance to avoid injury to the plaintiff and her husband. To support this position he relies upon the principle of law expressed in *647 Rottman v. Beverly [3] and extended in Jackson v. Cook,[4] the rationale of which is as follows:
If a plaintiff negligently places himself in a position of danger, and the defendant observes or should observe his peril in time to avert injury to the plaintiff, the law imposes a duty upon the defendant to avert disaster and protect the plaintiff from his own negligence. If he fails, his breach is construed, as the proximate cause of the accident, while the plaintiff’s own negligence is considered the remote cause of the accident.
Counsel for defendant insists that plaintiff’s negligence in entering the roadway without initially ascertaining that it was safe to do so was the proximate cause of the accident. He emphasizes that the plaintiff apparently saw the vehicle, turned back toward the curbing, and thus relieved the defendant of any further legal obligation to the plaintiff, since he could reasonably assume that the elderly couple would remain where they were or return to the safety of the uptown curbing of Tulane Avenue.
The foregoing résumé of the record and the respective contentions of counsel reveal that only questions of fact were posed for the lower court’s consideration and the judge thereof obviously accepted the defendant’s version of the manner in which the accident occurred, which was corroborated to an immeasurable extent by the physical damage incurred by the right center of the automobile, and he therefore concluded that the defendant was free of any negligence which contributed to the accident, and that the proximate cause thereof was the negligence of the plaintiff and her deceased husband in walking into the right side of the defendant’s vehicle, after they had given him every reason to believe they would remain in a position of safety until his vehicle had passed them.
The question which this appeal has posed for our consideration is whether that conclusion of the trial judge is so unsupported by the evidence as to warrant a reversal by us.
We are of the opinion that no useful purpose would be served by indulging in a discussion of the foregoing testimony, or by endeavoring to reconcile the respective litigants’ versions of the manner in which the accident occurred. The trial judge accepted the defendant’s version thereof and an analysis of the record convinces us that the evidence preponderates in his favor, and the judgment is therefore correct since it is in conformity with the law applicable to the facts found by the trial judge.
In a relatively recent case,[5] we expressed the opinion “ * * * that an automobile driver, proceeding at a proper speed who sees a pedestrian attempting to cross, which pedestrian is looking at the automobile and is apparently fully aware of its approach, may assume that the pedestrian, aware of the approach of the car, will stop before stepping into its path. * * * ‘Often, in crossing a street, a pedestrian, seeing a car approaching and about to pass in front of him, continues on his course until within a few feet of the path of the car and then stops to allow it to go by.’ ”
The rationale enunciated in Rott-man v. Beverly, supra, and extended in Jackson v. Cook, supra, to reiterate for the purpose of emphasis, is simply that when a defendant observes another in peril, of which he is not aware, then a second or subsequent duty arises and devolves on the defendant, which is to use every available means to avert injury.
If the defendant fails to perform this duty, his negligence in that respect is considered the proximate and immediate cause of the injury, and the negligence of the *648 plaintiff in placing himself in a position of danger, the remote cause.
In such cases the doctrine of last clear chance is applicable, even though plaintiff’s negligence continues up to the moment of the accident.
Clearly, the facts as found by the trial court, with which we agree, are not encompassed by the foregoing rationale, since the plaintiff and her husband gave the defendant every reason to believe that they were fully aware of his approach and would remain in a position of safety until the vehicle had passed them.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. 69 years of age.

. 67 years of age.

. 1953, 183 La. 947, 165 So. 153.

. 1938, 189 La. 860, 181 So. 195.

. Bechtel v. Oriol, La.App.1951, 52 So.2d 589, at page 593.