165 So. 153

**ROTTMAN v. BEVERLY et al.**

No. 33596.

Dec. 2, 1935.

Rehearing Denied Jan. 6, 1936.

W. S. Rownd, of Hammond, and M. C. Scharff and Max M. Schaumburger, both of New Orleans, for applicants in writ.

William H. Talbot, of New Orleans, for respondent in writ.

ODOM, Justice.

Mrs. Rottman was run into and badly injured by an automobile driven by Charles F. Beverly, who at the time was employed by and on a mission for the Colgate-Palmolive-Peet Company. She brought suit against Beverly and the company for damages resulting from her injuries. The trial judge awarded damages against the defendants in solido for $4,000, plus $240 for medical and hospital expenses.

On appeal to the Court of Appeal, First Circuit, the judgment was reversed by a divided court. 162 So. 73, 75. Mrs. Rottman applied to this court for writs, which were granted.

In her application for writs, Mrs. Rottman set up as ground therefor that the Court of Appeal had erred in holding that even though it be conceded that the defendant Beverly was negligent in the operation of his car, she could not recover because she herself was guilty of contributory negligence which continued down to the moment of the accident. The question which she presented was whether under the facts and circumstances disclosed by the record the last clear chance doctrine applied.

The Court of Appeal in its opinion said:

"Her negligence [meaning negligence of plaintiff], as heretofore stated, was inexcusable, and it continued up to the very moment of the accident. Our Supreme Court has repeatedly held that under such circumstances the doctrine of 'last clear chance' does not apply."

Citing Jarrow v. City of New Orleans, 168 La. 992, 123 So. 651, and Harrison v. Louisiana Western Railway Company, 132 La. 761, 61 So. 782, 783.

Not only in the cited cases, but in others, this court has said in general terms that the last clear chance doctrine will not be extended to cases where the plaintiff's own negligence extended up to and actually contributed to the injury.

In the case of Harrison v. Louisiana Western Railway Company, supra, the defendant denied liability on the ground that the plaintiff was guilty of contributory negligence which barred recovery. Counsel for plaintiff, apparently conceding that plaintiff was guilty of contributory negligence, contended that the last clear chance doctrine applied, and in disposing of the case the court said:

"The proposition upon which the learned counsel [counsel for plaintiff] rests his case that: 'The defense of contributory negligence will not avail if, by reasonable care on the part of those in charge of the train, the accident could have been avoided'—is correct only with the qualification that the contributory negligence of the person injured has not continued down to the occurring of the accident, or, in other words, been concurrent with that of the

defendant at the very moment itself of accident.

" 'This so-called exception to the rule of contributory negligence (i. e., the doctrine of "last clear chance") will not be extended to cases where the plaintiff's own negligence extended up to and actually contributed to the injury. To warrant its application there must have been some new breach of duty on the part of the defendant subsequent to the plaintiff's negligence.' "

Citing American & English Encyclopoedia of Law, vol. 2, page 64.

The doctrine of the Harrison Case was approved in Castile v. O'Keefe, 138 La. 479, 70 So. 481, and again in the Jarrow Case, supra. These cases have been repeatedly followed by each of the three Courts of Appeal in this state. In fact, the rule above stated seems to have been followed generally by the courts throughout the country.

It is frequently stated by courts that there can be no recovery in negligence cases "where it appears that the negligence of the plaintiff continued until the moment of the accident," but that is not a correct statement of the rule. Thus broadly stated, it is misleading, for it is not true in a strict legal sense that a plaintiff is barred from recovery under any and all circumstances merely because he was guilty of negligence which continued down to the moment of the accident which caused his injury, and this court has never so held.

In the Harrison Case, supra, the facts were that the party killed by the train was walking absent-mindedly on the main track of a railroad when he knew, or should have known, that a train or an engine might approach at any moment. He was negligent in failing to look and listen. Those in charge of the train were also negligent in failing to keep a lookout and in exceeding the speed limit. The presence of the pedestrian on the railroad track was not discovered by those in charge of the train prior to the accident. In the Jarrow Case, supra, the plaintiff was negligently walking on a spur track when struck and injured by an engine. Those in charge of the engine were negligent in failing to keep a lookout. They could have seen the plaintiff on the track if they had looked, but they did not look and never saw him on the track at all. In each of the cases the court absolved the defendant from liability, and discussed the rule that a plaintiff cannot recover if his own negligent conduct continues to the moment of the accident.

In the Harrison Case the court said that the man on the track "continued down to the last moment to have just as good, if not a better, chance than the engineer to avert the accident." The same was true in the Jarrow Case. The pedestrians were not aware of the approach of the engines and those in charge of the engines were not aware of the presence of the pedestrians on the track. There was negligence on both sides which continued to the moment of the accident, and the negligence on each side was of the same character— a failure to observe, to take proper precautions. The negligence of the plaintiffs and

that of the defendants was concurrent, contemporaneous, down to the moment of the accident.

In those cases the fault of each operated directly to cause the injury. The defendants had no better "last chance" to avert the accident than did the pedestrians, and inasmuch as the pedestrians could have avoided the injuries by taking proper precautions, and failed to do so, and as their negligence continued down to the accident, they were in no position to invoke in their behalf the doctrine of last clear chance.

■ But in those cases if the engineers and others in charge of the engines or trains had actually discovered the peril in which the pedestrians had negligently placed and kept themselves, and after discovering the danger had negligently failed to use such reasonable and available precautions as would, if exercised, have saved the pedestrians from the consequences of their negligence, the plaintiffs might have been entitled to a verdict. This is upon the well-recognized principle that it is the duty of those in control of dangerous instrumentalities to avoid accidents and injuries to others if they reasonably can, even though the party in danger may have negligently placed and kept himself in a position of peril of which he was unaware.

The courts make a distinction between cases where a plaintiff's peril is not discovered by the defendant before the accident and cases where it is discovered. In a voluminous note following the case of Smith v. Gould, 92 A.L.R. 28, the annotator says at page 92:

"It is true that the courts not infrequently declare broadly, and without expressed qualification, that the doctrine (of last clear chance) does not apply where the negligence of the injured person is continuous and operative down to the moment of the injury; but in most at least of such cases it appears that the negligence of defendant was predicated upon the breach of a duty to discover the danger, and not upon the breach of duty after actual discovery."

A similar statement is found in 20 R. C.L. § 116, page 142, where it is said:

"Very often the proposition has been stated that there can be no recovery where it appears that the negligence of the plaintiff continued until the very moment of the injury, which is understood to mean that both parties neglected to use their senses to discover the dangerous situation."

In Woloszynowski v. New York Central Railroad Company, 254 N.Y. 206, 172 N. E. 471, 472, Judge Cardozo said:

"The doctrine of the last clear chance, however, is never wakened into action unless and until there is brought home to the defendant to be charged with liability a knowledge that another is in a state of present peril."

■ Where the danger is brought about by plaintiff's own negligence, but is not discovered by defendant, because of a failure to exercise due care, the parties are on equal footing. Their faults are mutual, their negligence is concurrent. It arises from the same cause, viz., failure to observe. The negligence of each party is a contributing cause of the accident. In

such case it cannot be determined whether the negligence of the plaintiff or that of the defendant was the proximate and immediate cause of the injury, and neither party can recover.

But if a plaintiff negligently puts himself in a place of danger and his negligence and danger are actually discovered by the defendant, then there devolves upon the defendant a duty which intervenes or arises subsequent to the negligent acts of the plaintiff, and that duty is to save the plaintiff from the consequences of his negligent acts if he can. The first duty of those who operate engines or motor vehicles is to keep a sharp lookout ahead to discover the presence of those who might be in danger. If they perform that duty and discover that some one is in danger, then a second duty arises, and that is to use every possible available means to avert injury. If the defendant fails to perform that duty, his negligence in that respect is regarded as the proximate and immediate cause of the injury and the negligence of the plaintiff in putting himself in a place of danger, the remote cause. In such cases the last clear chance doctrine applies even though plaintiff's negligence continues up to the accident.

There are numerous cases holding that the doctrine of last clear chance never applies unless the danger is actually discovered by the defendant. Other cases go further and hold that the doctrine applies where the danger could and should have been discovered by the exercise of due diligence. See case note, 92 A.L.R. 128, 129;

also "Doctrine of Discovered Peril or Last Clear Chance," 20 R.C.L. § 114, page 138.

A reading of the cases will show that in nearly every instance where it was held that a plaintiff could not recover if his negligence continued down to the moment of the accident, the facts disclosed that the negligence of the defendant consisted of a failure to discover the perilous position in which the plaintiff had negligently placed himself.

Such were the facts in the Harrison, Jarrow, and Castile Cases, supra, cited by the Court of Appeal. The court in those cases applied such legal principles as were applicable under the facts before it. The court in each of those cases found that there was concurrent failure of the plaintiffs and defendants to discover the danger. The cases therefore do not support the broad, general proposition that in negligence cases where contributory negligence is involved, a plaintiff cannot recover if his own negligence continued down to the moment of the accident.

In cases of discovered peril, it is pertinent and material to ascertain whether the defendant could, after discovering plaintiff's peril, have averted the accident by the exercise of due diligence. If he could have averted the accident by the exercise of due diligence and failed to do so, his negligence in that respect is considered the proximate and immediate cause of the injury, and the plaintiff's negligence the remote cause, and the plaintiff may recover although his negligence continued to the instant of the accident. The basis of recovery in such cases is the defendant's

superior knowledge of the peril and his ability to avoid the injury. He has the last clear chance. 20 R.C.L. § 116, page 141.

■ Of course, there can be no recovery against defendant if he used due care in discovering the peril and after discovering it could not avoid the accident, as in such case there would be no negligence at all on the part of the defendant.

■ Now, applying these principles, what are the results in the case at bar? Here plaintiff's peril was discovered by defendant. The facts are that the accident occurred on a paved highway running north from the city of New Orleans to Hammond, La. The highway has a concrete slab about 18 feet wide in the center, and shoulders 5 to 7 feet wide on each side. At about 10 or 11 o'clock in the daytime Mrs. Rottman attempted to cross the highway diagonally from the west to the east side. She neither looked nor listened before entering the highway, but proceeded to cross with her head down, paying not the slightest attention, and seemed to be utterly oblivious to danger. The defendant Beverly was driving north on the highway and says when he first saw Mrs. Rottman she was entering the road opposite a filling station. Other statements made by him indicate that he saw her about the time she stepped on the concrete. He was asked how far he was from her when he first saw her and he said that he did not know, but he would estimate the distance at 40 to 50 feet. He stated, however, that this estimate of the distance was a pure guess. It is perfectly clear that he was uncertain as to the distance. A party who was riding on the seat with him said that he saw plaintiff when the car was some 60 to 75 yards away. The road is straight and the view was unobstructed. It is certain that Beverly could have seen plaintiff sooner than he did if he had looked. Considering the uncertainty of Beverly as to the distance in connection with the statement of the party who was riding on the seat with him, we conclude that he must have seen plaintiff when his car was much further than 40 or 50 feet away.

Mr. Beverly was asked what he did first after seeing plaintiff start to cross the highway, and he said:

"Started blowing my horn, kept my hand on the horn button and started to put on my brakes slow at first. I thought I could cut in front of her. She had her head down. When I saw I couldn't do that I cut back on the highway on the concrete and struck her about the concrete road on the concrete."

He was asked how far he was from Mrs. Rottman when he applied his brakes and he said, "At once, when I saw her I stepped easy on the brakes. I thought she would see me and stop and when I saw she didn't see me, I put them on right fast."

Mr. Beverly was driving north on the highway and from the testimony he was on the east or his right-hand side. Mrs. Rottman entered the road from the west or the driver's left-hand side and attempted to cross diagonally to the east side. The testimony of Beverly, as well as that of Holloway, who was riding on the front

seat, shows that Beverly did not, when he first saw plaintiff attempting to cross the road, apply the brakes except slightly. But he blew his horn and swerved to the right, thinking that plaintiff would hear the horn and either stop or slacken her pace, which would have given him a chance to pass in front of her on the east side of the road. This accounts for his failure to apply his brakes full force. But plaintiff did not halt and when Beverly saw that, he then applied his brakes "right fast," as he expresses it, and swerved sharply to the left in order to pass behind her on the left-hand side of the road. But he had waited too long. He was so close to her when he made that move that his car struck her as he made the turn. His car was then completely out of his control, as shown by Holloway's testimony and the fact that it ran some distance beyond where plaintiff was struck, turned completely around, and when it came to rest was headed south, the direction from which it had come.

Mr. Holloway says that when the driver first saw plaintiff he "started to put on the brakes gradually and blow his horn. * * * Then he saw that she wasn't going to stop, so he jammed the brakes on."

He was asked how far the car was from plaintiff when he first saw her. Mr. Holloway said, "Sixty or seventy-five yards." He was then asked, "Is that when he (meaning Beverly) first started blowing his horn and applying his brakes?" He said, "Yes." He said plaintiff was then on the pavement on the left-hand or west side. These questions and answers then followed:

"Q. And he kept approaching and she kept walking? His car kept in motion?

"A. And blew his horn.

"Q. Now you said traveling about forty or forty-five miles an hour?

"A. Yes, sir.

"Q. Do you know of anything that would have prevented him from stopping his car? Couldn't he have put his foot on the brake and stopped the car running forty or forty-five miles an hour?

"A. Yes, he could.

"Q. He didn't do it, did he?

"A. No."

Questioned as to the position of plaintiff on the highway when struck by the car, Mr. Holloway said she was about 2 feet from the east edge of the concrete and that the brakes "locked" when the car was within 15 feet of her.

Mr. Beverly says that plaintiff was just east of the center of the concrete slab when his car struck her. We think he is mistaken about that. If she was that close to the center of the concrete, which was 18 feet wide, there was a distance of from 12 to 14 feet between her and the extreme eastern edge of the road, including the shoulder, which is said to be 5 to 7 feet wide, which was ample space for him to pass in front of her. That is what he says he intended to do and tried to do. There would have been no occasion for him to swerve sharply to the left when and as he says he did in order to go behind her. He says that when he saw that plaintiff would not stop, he swerved to the east and that his right wheels went off the pavement on

that side before he turned to the left. He says he saw he could not pass in front of her and that is no doubt true. Not only this, Mr. Holloway says she was within 2 feet of the east edge of the concrete.

Our conclusion therefore is that between the time Mr. Beverly first saw Mrs. Rottman enter the highway and the moment the car hit her, she had walked a distance of something like 18 or 20 feet, as she was walking diagonally across. If she was walking, say, 4 miles an hour, or approximately 6 feet per second, it took her between three and four seconds to walk that distance. If the car was going at the rate of 45 miles an hour, as both Beverly and Holloway say it was, it ran considerably more than 200 feet while Mrs. Rottman was walking across the road, because a car running 45 miles an hour runs 66 feet each second. According to this, the car must have been more than 200 feet from plaintiff when the driver first saw her, and this corresponds with Mr. Holloway's estimate. He says when Beverly first blew his horn and applied the brakes gently it was about 60 to 75 yards down the road from where plaintiff entered it.

The car was equipped with hydraulic brakes which were operating perfectly. It seems perfectly clear to us that if the driver of the car had made full use of the brakes when he first saw plaintiff enter the road, instead of applying them "easy," as defendant says he did, he could either have stopped the car or brought it under such control as would have enabled him to avoid the accident.

We think, under the circumstances, it was the driver's duty to make full instead of partial use of the brakes. The driver seems to have depended principally upon the horn instead of the brakes. He thought the plaintiff would hear and she could if she had been listening. Both her hearing and her eyesight were perfect. If she had listened, she would have heard the horn, and if she had looked, she would have seen the car. She did neither and was therefore guilty of the grossest kind of negligence.

But her negligence in that respect does not bar recovery, because the driver of the car unquestionably had the last clear chance to avert the accident by making proper use of available and adequate means. The roadway including the shoulders is about 30 feet wide. The driver had the facilities and ample time to bring the car under control. If he had done that, the space being ample, he could have missed her.

Counsel for the defendant does not admit that the driver of the car was negligent. He does not say, however, that he could not have brought his car under control if he had properly applied the brakes. He invokes the rule, which is sound and well-recognized, that the driver of a motorcar has a right to assume that pedestrians walking on or near public highways constantly used for vehicular traffic will not negligently put themselves in peril by entering the traffic lanes. But that theory as a defense passes out of a case when it is admitted by the driver that when the pedestrian was first seen, the pedestrian

was then in peril or in the very act of placing himself in a position of peril. He is in no position to indulge in presumption. He is confronted with a condition and not a theory.

Our attention is called to the provisions of rule 11, subdivision (d), § 3, Act No. 21 of 1932, prescribing the rules of the road, which seems to throw a greater responsibility upon pedestrians using public highways than upon motorists, which is the reverse of the rules established and adhered to prior to its adoption. However, whatever may be the effect of its application in determining the question of negligence in personal injury cases like this one, it does not abolish or modify the doctrine of last clear chance, which is firmly established not only here but throughout the entire country.

The judgment of the district court, we think, is correct both as to liability and the quantum of damage.

For the reasons assigned, the judgment of the Court of Appeal is reversed and set aside and it is ordered that the judgment of the district court be affirmed, defendants to pay all costs.