The plaintiffs are the two brothers and a sister of Isaac Coleman, who was killed shortly after one o'clock A.M. on August 22, 1939, when he was run over by an ice truck belonging to the defendant ice company and being driven by its employee, Joe Melancon, in the course of his employment. The accident occurred on U.S. Highway 90 a few miles east of Morgan City. The ice truck was going west, and the deceased was walking east on his left, or the north side of the road.
Plaintiffs claim damages for loss of love and affection on account of the death of *Page 314 
their deceased brother in the sum of $7,500. The defendants are the Terrebonne Ice Company, Inc., and its insurance carrier, the Maryland Casualty Company. The appeal is by the plaintiffs from a judgment which dismissed their suit.
The deceased had been drinking in a saloon located near the highway during the night up to the time the saloon closed at midnight, and thereafter he had been wandering up and down the highway in a partly drunken condition in an effort to locate a house not far from the scene of the accident. Apparently, he had lost his way, and in his condition was unable to find the house to which he intended going.
The only witnesses available to the plaintiffs, other than the driver of the ice truck, in proving the accident and the manner of its occurrence were four or five residents living in the vicinity who were called from their homes and came out to the scene of the accident shortly after it occurred. The truck driver first called a Mr. Domague who lives on the north side of the highway near the scene of the accident, and he went out to the scene with the truck driver where he found the deceased lying on the pavement about one foot north of the center line, with his feet toward the east and his head toward the west. He saw a large spot of blood about a foot from the black line. The body of the deceased was so badly mangled that it could not be identified by this witness. He and the truck driver removed the body from the pavement and placed it on the north shoulder of the road. Mr. Domague and his wife stayed at the scene while the truck driver went to get other help.
Other residents of the neighborhood came out to the scene of the accident and saw the body of the deceased lying on the shoulder of the road and the blood spot on the pavement, some of the witnesses stating that this blood spot was a foot or so from the center line, while others located it from three to four feet from the center line toward the north shoulder.
There is no dispute but that the deceased was struck by the right front part of the trailer at a point on the pavement between the center line and the north shoulder of the road — the preponderance of the evidence indicating that the impact took place a foot or two north of the center line. The manner in which the accident occurred must be determined by the testimony of the truck driver, taken in connection with the physical facts and circumstances as they existed shortly after the accident.
The testimony of the truck driver as to the manner in which the accident occurred may be summarized as follows: he was driving from 20 to 25 miles per hour going west toward Morgan City, when he saw the deceased walking on the shoulder of the road 8 or 9 feet from the pavement coming toward him on the north side of the highway (the driver first testified the deceased was on the south side of the highway, but he later corrected his mistake by stating that the deceased was on the north side, that is the deceased was walking toward the truck on the deceased's left side of the road); that he saw the deceased at the distance covered by the range of his headlights, estimated at something over 200 feet, and the deceased continued walking toward him on the shoulder of the road until he was within 25 or 30 feet of the truck, when he suddenly came over on the pavement and "jumpted" into the trailer of the truck. The truck driver says in describing the accident: "He was first on the shoulder, and then he got off and came towards the pavement, and he kept coming, and I kept pulling to my left, and when he kept coming, I blew my horn, and that is when he jumped for the truck."
We gather from the testimony of the truck driver that he saw the deceased coming toward him a distance of some 200 feet; that there was nothing in the action of the deceased to indicate that he was in an intoxicated condition, or otherwise did not have full control of his faculties; that the deceased suddenly began coming toward his truck onto the pavement in front of the truck at a distance of 25 or 30 feet, whereupon he, the truck driver, pulled his truck to the left in order to go around the deceased and blew his horn; that the front or cab part of the truck missed the deceased, but the latter struck the right front part of the trailer.
It is conceded by counsel for plaintiffs, and in fact he pitches his whole case on the ground that, conceding that the deceased was guilty of negligence in coming from his left and proper side of the highway onto the pavement in front of the approaching truck, the truck driver had the last clear chance of avoiding the accident after he saw, or should have seen, the dangerous situation in which the deceased had placed himself, in accordance with the rule adopted in the recent cases applying the *Page 315 
doctrine of last clear chance, particularly those of Rottman v. Beverly et al., 183 La. 947, 165 So. 153, and Jackson v. Cook,189 La. 860, 181 So. 195.
It is true that the truck driver admits that he saw the deceased walking on the shoulder of the road, coming toward the truck for a distance of 200 feet or more. Had there been anything in the actions of the deceased in walking along the shoulder of the road toward the truck which should have indicated to the truck driver that the deceased was in a drunken condition, or was not walking in a normal manner, the truck driver would have been under the duty of slowing down his truck and taking other precautionary measures for stopping the truck and bringing it under such control as to avoid striking the deceased in case the latter should come onto the highway in front of the truck, but, as already stated, there was nothing in the action of the deceased to indicate to the truck driver that the former would leave his place of safety on the shoulder of the road and come into the path of the truck until the deceased had gotten within 25 or 30 feet of the truck.
The question then arises as to whether or not the truck driver did all that he reasonably could do to avoid the accident after he was aware of the fact that the deceased was coming onto the pavement in front of him. It seems to us that the truck driver in pulling to his left and blowing his horn did about all that he could do to avoid striking the deceased who came suddenly and diagonally across the pavement toward the on-coming truck. The pulling of the truck to the left did have the effect of causing the cab or front part of the truck to miss the deceased, but as he was coming toward the truck, he struck the projecting part of the trailer on the right side which caused him to be violently thrown to the pavement and immediately killed. The fact that the deceased was struck not far from the center of the pavement indicates that the truck had been pulled almost completely to its left side of the road in the effort of the driver to avoid striking the deceased. While it is true that the truck driver did not apply his brakes immediately after the deceased began coming toward the truck, yet it is obvious that the truck could not have been stopped in the short distance available for that purpose after the emergency arose.
The driver of a motor vehicle, traveling on his proper side of the road and at a lawful rate of speed, as was the truck driver in this case, has a right to assume that a pedestrian coming from the opposite direction and walking on his left and proper side of the road will continue to walk in a safe position, and such a motorist is not required to anticipate that such a pedestrian will suddenly and without any apparent cause, leave his place of safety and walk onto the pavement in front of the approaching vehicle, unless there is some unusual action on the part of the pedestrian to indicate to the driver that he is not in full possession of his faculties and is unable to properly look out for his own safety.
However regrettable this unfortunate accident may have been, we are unable to find any negligence on the part of the driver of the ice truck which could be legally held to be a contributing factor in causing the accident. In our opinion, the trial judge was correct in finding and holding that the proximate cause of the accident was the rash and negligent act of the deceased in suddenly and without warning coming onto the pavement and running into the on-coming truck.
For the reasons assigned, the judgment appealed from is hereby affirmed at the cost of appellants in both courts.
LE BLANC and DORE, JJ., concur.