## BLACK v. TEXAS & PACIFIC RY. CO.
### Civ. No. 3308.

United States District Court,
E. D. Louisiana, New Orleans Division.
Nov. 19, 1952.

444

———◆———

Bentley G. Byrnes and Edward A. Wallace, New Orleans, La., for plaintiff.

Phelps, Dunbar, Marks & Claverie and J. Barnwell Phelps, New Orleans, La., for defendant.

WRIGHT, District Judge.

This action arises out of a collision between a freight train being operated by defendant westbound through the City of New Orleans and a tractor and trailer. The impact drove the tractor (truck) and trailer into a second tractor owned by the plaintiff, who sues for the damage thereto. The issue in the case is whether the defendant had the last clear chance to avoid the accident. The issues of fact and law having come on to be heard on the pleadings and proofs of the parties and due deliberation having been had, the court now makes the following findings of fact and conclusions of law.

### Findings of Fact.

1. At 5:20 p. m., January 8, 1951, steam engine No. 810 of the Texas and Pacific Railway Company left the Race Street yards in New Orleans, Louisiana, pulling 44 cars of bananas, and proceeded west along the main line outbound track of the New Orleans Public Belt Railroad. In the cab of engine No. 810 were J. L. Maddox, an engineer with over 30 years' experience in such position, fireman H. L. Gahman, with over 10 years' experience, and head brakeman C. V. Barbat, with over 25 years' experience. This engine and all cars were inspected prior to leaving the Race Street yards, and all equipment, particularly the brakes and headlight, was in first class working condition. The headlight, which must be kept burning on a 24 hour basis when the train is in operation, was adjusted so that under conditions of good visibility the form of a man at a distance of 800 feet would be outlined in its shaft.

2. Engine No. 810 proceeded via the Public Belt main line outbound track and crossed Napoleon Avenue at approximately 5:30 p. m. In approaching this crossing, the regular crossing signals were blown, the bell was ringing and the headlight was burning brightly, with the engine running at a speed of approximately 16 miles per hour. Engineer Maddox, several hundred feet before reaching the crossing, made a service application of the brake on the train and reduced his speed to about 14 miles per hour. On seeing the crossing was clear, he released his brake and picked up speed to 16 miles per hour.

3. The main line outbound Public Belt track, on which engine No. 810 was traveling, commences to curve slightly to the north (right) some distance beyond the Louisiana Avenue crossing, straightens out and commences to curve slightly to the south (left) when 293 feet east of the western edge of the Napoleon Avenue crossing. It then straightens out at a point approximately 75 feet west of the western edge of Napoleon Avenue crossing. From this point to where the accident occurred, approximately 300 feet farther west, the track is straight. In spite of the slight curving there was nothing which would blank off the line of sight along the track from the place of the accident to a point one half mile east.

4. Complainant, through his employees, was engaged during the afternoon in loading looms from the second floor of the Lane Cotton Mills, the eastern property line of which is located approximately 225 feet from the western edge of Napoleon Avenue. The southern end of the property, where the loading operations were in progress, faces the New Orleans Public Belt Railroad tracks. These loading operations were under the direction and control of complainant's employees. During the course of complainant's operations his employees had parked an International tractor with trailer attached in a jackknifed position so that the forward end of the tractor obstructed the north (right) rail of the main line track.

5. This International tractor with trailer attached had been removed from its jackknifed position fouling the main line track on several occasions during the day to allow trains to go by on this track. Also during

the day several trains had switched from the main line to an adjoining line in order to avoid contact with the tractor and trailer. A switch track begins several feet east of the Lane Cotton Mill property and runs west approximately 400 feet before rejoining the main line.

6. Complainant's employees had been advised by an employee of the Lane Cotton Mills that their tractor was fouling the main line. Complainant continued to use the tractor in this position, however, in order to facilitate the loading of the looms coming down from the second floor of the Lane Cotton Mills.

7. Complainant's employees heard the train blow for the Napoleon Avenue crossing. At the time it was approximately 1,000 feet away. One of complainant's employees ran up the track a few feet and as the train was coming into the Napoleon Avenue crossing signalled with his arms for the train to stop. Because of preoccupation with the Napoleon Avenue crossing and possibly because of visibility restrictions, no member of the train crew saw this signal. No effort was made by any one to start the tractor and clear the track. When it became apparent that the train was not stopping, the men engaged in the loading operations left the vehicles and sought places of safety.

8. After crossing Napoleon Avenue and at a distance of about 75 feet from the westernmost edge of said crossing, where the main line outbound track straightens, the headlight of engine No. 810 projected its beam directly between the rails of the track and engineer Maddox discovered the presence of the International tractor approximately 300 feet away. On seeing the tractor Maddox at first took no action whatever. Later, on definitely ascertaining that the tractor was fouling the track and with the tractor now approximately 200 feet away, Maddox applied the emergency brake. The train struck the right front bumper and fender of the International tractor driving it into the Reo tractor. A fire resulted and the Reo tractor was badly damaged by the fire as well as through the impact with the International tractor.

9. If the emergency brake of the train had been allowed to remain on, the train would have come to a full stop with the forward part of the engine a few feet past the point of impact with the tractor. The emergency brake was released, however, in order to get the fuel laden engine away from the fire and the train came to a stop with the engine and one box car past the point of impact. If the emergency brake had been applied when Maddox first saw the tractor, the accident would have been avoided by the train coming to a stop before the point of impact.

10. The impact occurred at dusk, thirteen minutes after sunset. The sky was cloudless and there were no restrictions to visibility other than the fact that at dusk much of the daylight is gone and artificial light is less effective at dusk than in darkness.

11. Neither complainant nor his employees received permission of any kind from the New Orleans Public Belt Railroad to park any of the tractors upon the railroad right of way. Neither the defendant nor any of its employees had been warned of the fouling of the track by the International Tractor and at the time of the accident no lights of any kind were burning on any of the vehicles involved in the loading operation.

12. Engine No. 810 was damaged to the extent of $100. The value of the Reo tractor at the time of the accident was $3,500. Its value as salvage after the accident was $400. No other items of damage claimed by complainant are allowable. They relate to acts of complainant which increased rather than minimized his damages.

Conclusions of law.

1. This court has jurisdiction over the subject matter of this action and venue is properly laid in the Eastern District of Louisiana. 28 U.S.C. § 1332.

2. The law of Louisiana is applicable to the facts of this case. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188.

3. Under the law of Louisiana it is the duty of the operator of the train to

446

discover the presence on the track of any person, including a trespasser, and to avoid injuring him if it is possible to do so by the exercise of reasonable care, even though that person's peril may have resulted from his own negligence. Tillman v. Public Belt R. R. Commission, La.App.1949, 42 So.2d 888, 891; Shaw v. Missouri Pacific Ry., D. C.W.D.La.1941, 39 F.Supp. 652; Cheek v. Thompson, D.C.W.D.La.1939, 28 F.Supp. 391; Neal v. Louisiana & Arkansas Ry., La.App.1944, 17 So.2d 374; Griffin v. Thompson, La.App.1942, 11 So.2d 114.

■ 4. Under the law of Louisiana if the operator of a train sees or should see a person in a position of peril, from which position the person cannot extricate himself, at such time that by the exercise of reasonable care the train can be brought to a stop before striking the person, the operator of the train has the last clear chance to avoid the accident. If he fails so to do, he is guilty of negligence and the injured person may recover even though his own negligence continues to the moment of the accident. Rottman v. Beverly, 183 La. 947, 165 So. 153; Jackson v. Cook, 189 La. 860, 181 So. 195.

■ 5. There is nothing in the law of Louisiana which would limit the doctrine of last clear chance to personal injury as distinguished from property damage.

■ 6. Complainant was guilty of negligence in obstructing the main line track with the International tractor and his negligence continued to the moment of the accident.

7. Complainant's negligence placed his property in a position of peril. On becoming aware of the approach of the train, it was then too late for complainant safely to remove his property from the track. Any attempt at removal at this time would have been foolhardy. In all probability such an attempt would have resulted in personal injury, if not death.

■ 8. The operator of the train saw or should have seen the tractor fouling the track at least 300 feet before the train reached the point of impact. His failure to apply his emergency brake immediately was negligence on his part, and his failure to apply the emergency brake immediately caused the accident. By his own statement the operator could have stopped the train in the condition it was and traveling at the speed it was in 200 feet or less.

9. The operator of the train had the last clear chance to avoid the accident. His failure to do so makes the defendant liable in damages.

Let a judgment be prepared in accordance herewith.