**TEXAS & PACIFIC RY. CO.
v. BLACK et al.**

No. 14397.

United States Court of Appeals
Fifth Circuit.

April 30, 1953.

Rehearing Denied July 27, 1953.

J. Barnwell Phelps, New Orleans, La., Phelps, Dunbar, Marks & Claverie, New Orleans, La., (Blake West, New Orleans, La., of counsel), for appellant, Texas & Pacific Railway Co.

Bentley G. Byrnes, New Orleans, La., Edward A. Wallace, New Orleans, La.,

for appellee, R. Q. Black, D/B/A Superior Trucking Co.

Before HOLMES, STRUM and RIVES, Circuit Judges.

STRUM, Circuit Judge.

This is an action to recover the value of a Reo truck alleged to have been destroyed by the negligence of the appellant railway, which was defendant below.

Between 5:30 and 5:45 p. m. on January 8, 1951, defendant's train consisting of 46 cars of bananas and a caboose, drawn by a steam locomotive, was proceeding westerly from downtown New Orleans at a speed of about 16 miles per hour, along the main line track of the New Orleans Public Belt Line, which at the point in question runs in an east-west direction through a thickly populated industrial and residential area.

About 429 feet west of the Napoleon Avenue crossing, on the northerly side of the track, an International tractor-trailer truck was parked in a jack-knife position in front of the Lane Cotton Mills, with the right front bumper and fender of the truck "fouling" the north (right) rail of defendant's out-bound main line track. The truck was parked in this position to receive a cotton loom, a large, heavy piece of machinery, which was being removed from the cotton mill, and which could be brought out only through the opening in the building before which the truck was parked. In order to load the loom directly on the International truck, it was necessary to park it in the position just stated. There was not sufficient space between the cotton mill and the railroad track to leave the truck in the clear.

Near the International truck, but clear of the railroad track, another tractor truck, a Reo, owned by the plaintiff below, was also parked. Though the International truck was owned by another person, both trucks were engaged in the same general loading operation, and both were under control of plaintiff. The engine pulling defendant's train collided with the right front corner of the International truck, pushing it violently against the Reo truck, badly damaging the latter. A fire immediately ensued which substantially destroyed the Reo. Applying the doctrine of last clear chance, the district judge, hearing the case without a jury, gave judgment for plaintiff, and the railway appeals.

One of the most controverted questions in the case was the state of visibility at the time of the accident, as it had a vital bearing upon whether the engineer could and should have seen the truck in time to stop the train and avoid the injury.

On the day of the accident, January 8, 1951, sunset occurred at New Orleans at 5:17 p. m. The district judge found that the collision occurred "at dusk, 13 minutes after sunset," which would be at 5:30 p. m. The sunset was clear, the sky was cloudless, and there were no weather restrictions to visibility. Optimum conditions for a maximum period of twilight prevailed. On this day, in the latitude on New Orleans, "civil twilight" continued for a period of 26 minutes after sunset, or until 5:43 p. m. "Civil twilight" is the period after sunset during which the natural illumination remains sufficient for ordinary operations to be carried on without the aid of artificial light. Technically, it is described as the interval between sunset and the time when the center of the sun is six degrees below the horizon. Visibility during this period is sometimes diminished by weather conditions.

Defendant's locomotive headlight was burning at the time of the collision, but no lights were burning on the parked trucks. As defendant's tracks approach Napoleon Avenue from the east, there are slight curves first to the north and then to the south, but neither of these obstructs the engineer's forward view on the north side of the track for a distance of half a mile, and the track straightens out entirely 354 feet east of the point of collision. The slight curve to the south which occurs just before reaching Napoleon Avenue tends to aid, rather than hinder, the engineer's view of objects on the north side of the track, where this truck was parked.

The district judge held that under the law of Louisiana, if the operator of a train sees, or in the exercise of reasonable care should see, a person in a position of peril from which the person can not extricate himself, at such time that by the exercise of reasonable care the train could be brought to a stop before striking the person, the operator of the train has the last clear chance to avoid the accident, and if he fails to exercise due care so to do he is guilty of negligence, and the injured person may recover even though he be a trespasser and his own negligence continues to the moment of the injury. Rottman v. Beverly, 183 La. 947, 165 So. 153; Jackson v. Cook, 189 La. 860, 181 So. 195; Tillman v. Public Belt R. R. Comm., La. App., 42 So.2d 888. This principle is not limited to personal injuries, but extends as well to property damage. See also Shaw v. Missouri Pac. Ry., Co., D.C., 39 F.Supp. 652; Cheek v. Thompson, D.C., 28 F.Supp. 391; Neal v. Louisiana & Arkansas Ry., La.App., 17 So.2d 374; Griffin v. Thompson, La.App., 11 So.2d 114.

The district judge found that although plaintiff was negligent in parking the International truck so that it fouled the railroad track, the engineer of the train saw, or could have seen, the tractor, and that it was fouling the track, at least 300 feet before the train reached the point of impact; that the engineer's failure to immediately apply the emergency brakes, and keep them applied, was negligence on his part; and that such failure was the proximate cause of the accident. The engineer testified that he could have stopped the train within 200 feet or less, if the emergency brakes had been immediately applied and not released.

Although there were conflicts in the evidence, particularly as to the time of the collision and the conditions of visibility, the fact findings of the district judge are well supported, and on authority of the cases already cited we agree with the legal principles applied thereto.

Affirmed.