JANVIER, Judge.
At about 3:30 o’clock on the afternoon of August 1st, 1951, on South Claiborne Avenue near the corner of Perdido Street, in New Orleans, Marshall D. Whittey, a boy eleven years of age, sustained physical injuries when he was struck by an automobile which was owned and driven by Nat J. Loc-ascio, who was an employee of Rosemond J. Dufour and who, at the time, was operating his car in the course and scope of his employment.
Alleging that the accident was caused by negligence of Locascio and that both he, as operator of the car, and Dufour, as his employer, were liable for the results of that negligence, Steve Whittey, the father of the boy, brought this suit against both Locascio and Dufour praying for solidary judgment for $5,000 and, in his behalf, for solidary judgment for $153 for medical and other expenses.
It is alleged that the boy was on the upper lake side corner of Perdido Street and South Claiborne Avenue, and that he desired to cross the Avenue to the river side; that, after looking in a downtown direction and seeing no vehicles, he stepped into the roadway at the pedestrian crossing, walked towards the neutral ground, and had almost reached it when the automobile in question, driven “in a reckless, careless and wanton manner” by Locascio, who was not “maintaining proper vigilance,” approached at an excessive speed and struck the boy before he could complete the crossing.
In the petition it is charged that the car of Locascio had been on Perdido Street going towards Lake Pontchartrain, and that after it had traversed the neutral ground area of South Claiborne Avenue, had turned to the left into the lake side roadway of the Avenue just as the boy was attempting to cross and that, as a result, the boy was struck as the car completed the turn.
When the original answer of Locascio was filed it contained an admission that he had been operating the car on Perdido Street and had made the turn from that street into South Claiborne Avenue, but a supplemental answer was later filed and in that supplemental answer it was averred that Locascio had not been driving on Per-dido Street but had, in fact, been on South Claiborne Avenue for some distance and that the accident occurred after the car had crossed the Perdido Street intersection.
When the matter was argued before us counsel for Locascio, who had not represented him in preparing and filing the original answer but who had prepared and filed the supplemental answer, stated that the admission in the original answer had been made inadvertently.
Defendants denied any negligence on the part of Locascio and averred that the acci *457 dent resulted from negligence of the boy himself in that, at a point some distance above the pedestrian crossing, he had run into the street from between two automobiles which were parked at the curb and had suddenly appeared in front of the Lo-cascio car when it was so near to him that it could not be brought to a stop before it struck him.
Defendants averred that if there was negligence on the part of Locascio, the proximate cause of the accident was the contributory negligence' of the boy himself, who was eleven years of age at the time and was quite capable of being guilty of contributory negligence.
In the Civil District Court for the Parish of Orleans there was judgment dismissing the suit and it is now here on devolutive appeal.
In spite of the testimony of the boy himself and of one or two other witnesses who testified büt who did not see the actual occurrence, there is not the slightest doubt on the question of just where the boy was attempting to cross the street. It is absolutely certain that he 'was not at the pedestrian crossing, but was 30 feet up South Claiborne Avenue when he went into the street.
Locascio says that his car had passed tbe crossing some 20 feet when he first saw the boy and that he immediately applied his brakes and skidded about 5 or 6 feet and hit the boy when the front of the car had reached a point about 30 feet from the intersection; that the boy apparently entered the street from between two cars which were parked along the lake side curb of South Claiborne Avenue.
There was another car which was also going up South Claiborne Avenue in about the middle lane of the same roadway and this other car was in advance of Locascio’s car by a car length or so and was to its right. Locascio says that as this other car passed the point at which the boy emerged from between the two stationary cars, “he just dashed out,-and I had no chance of seeing him standing between the cars.”
John A. Lopez, who says that he is a civil service employee of "the City of New Orleans and is an “accident technician,” arrived on the scene spme 20 or 30 minutes or so after the occurrence. He says that the car had not been moved and that its front end was about 36 feet from the upper side of the pedestrian crossing; that there were skid marks extending 9 feet back of the rear wheels of the car; that the brakes of the car were in good condition and that there • was broken glass 30 feet from the crossing which indicated to him that the boy had been struck at that point. He says too that there was a mark on the pavement showing where the boy’s feet had been dragged and that this mark indicated that the boy was 30 feet from the crossing when he was struck.
Albert Raimer, another police officer who arrived shortly after the accident, said that when he reached the scene the car had not been moved and that its front end was 35 feet from the crossing, and Leon Couste, a police sergeant, says that the front of the car was 32 feet beyond the crossing. Both of these officers also testified that there were cars parked along the curb of South Claiborne Avenue.
It would serve no useful purpose to discuss in more extensive detail the evidence •on this question. It is certain that the boy was attempting to cross about 30 feet beyond the regular pedestrian lane. Even Nemiah Morrison, a witness placed on the stand by plaintiff but who obviously fabricated his story from beginning to end, says that when he got there the boy was lying 35 or 40 feet from the corner.
It is argued that the boy had no reason to go up South Claiborne Avenue and that he would naturally have crossed in the pedestrian lane, since he had come out Perdido Street on the lake side of South Claiborne Avenue and intended to continue on Perdido Street after crossing the Avenue. It is shown, however, that he had been walking with another little boy who, when they reached the Avenue, had turned up the sidewalk to go to the corner *458 of Poydras Street where his mother was employed, and, in view of the overwhelming evidence that the Whittey hoy was 30 feet up the Avenue when he attempted to enter the roadway, it is reasonable to believe that he had accompanied the other little boy up the Avenue for that short distance.
Furthermore, in spite of the denial of the boy that he had looked up and was attempting to return a baseball which had been knocked across the roadway from the neutral ground by other boys who were playing there, there is evidence to the effect that this is what actually occurred.
That there were cars parked at the curb is abundantly proven in spite of the statement of the little boy that there was only one car at the curb and that that was much farther up the street.
That the speed of the car was about 15 miles per hour is shown by all the witnesses who testified on the subject and, according to John A. Lopez, by an examination of the skid marks which resulted when the car was being brought to a stop.
That the boy ran across the street and did not walk as he stated is made very certain. Locascio stated that the boy “dashed” out and a little later said that the boy “ran out”. When the boy himself was on the witness stand and was asked what had occurred, he said that he saw no cars coming and “then I run across.” The District Judge noticed immediately the statement and asked, “What did you say?” and this time the boy said, “I walked on across.”
In his official report, Sergeant Couste said that the boy had stated to him that “he ran across the street * * * from the sidewalk, lake side sidewalk of South Claiborne, across to the neutral ground section.”
Dominick Manno, a disinterested witness, who operates' a battery rebuilding business across South Claiborne Avenue, said that he had just come out of the door of his establishment and he said:
“ * * * as I walked out the front door, this little boy was across the street, between two cars; he had a bottle of vinegar in his hand; they had a bunch of boys on the neutral ground, playing ball; one of the boys batted the ball on the lakeside banquette; and he picked up the ball, and wanted to bring it over to the neutral ground; and instead of going around the car, he came in between the two parked cars, and ran across in front of this man, with the bottle of vinegar and the ball in his hand.”
On the facts of the occurrence our conclusions are that Locascio was operating his car on the lake side roadway of South Claiborne Avenue; that his speed was about 15 to 20 miles per hour as he crossed the intersection of Poydras Street; that the young Whittey boy was attempting to cross the roadway at a point about 30 feet on the uptown side of the pedestrian crossing and that he entered the roadway from between two automobiles which were parked at the curb; that as he did so, there were approaching from his left two cars, the first was operated by an unknown driver in about the center of the roadway and about a car length in advance of the Locascio car which was nearer to the neutral ground, and that just as the first car passed in front of the boy he ran across in front of the Locascio car and had reached a point about four feet from the neutral ground when he was struck by the left front portion of the car.
Counsel for plaintiff argue that even if these be the true facts of the occurrence, still there is liability in defendants because of the effect of the doctrine of discovered or apparent peril, both of which doctrines are extensions of the doctrine of the last clear chance.
The doctrine of discovered peril first makes its appearance in Louisiana in Rottman v. Beverly, 183 La. 947, 165 So. 153, 156, in which the Supreme Court held that, although a plaintiff may have negligently gotten himself into a position of danger, still the defendant may be *459 liable if he actually discovered the danger of the plaintiff and had an opportunity to avoid striking him. In that case the Supreme Court said:
“ * * * if a plaintiff negligently puts himself in a place of danger and his negligence and danger are actually discovered by the defendant, then there devolves upon the defendant a duty which intervenes or arises subsequent to the negligent acts of the plaintiff, and that duty is to save the plaintiff from the consequences of his negligent acts if he can. * * * ”
Later, in Jackson v. Cook, 189 La. 860, 181 So. 195, the Supreme Court held that even though the plaintiff may have negligently gotten himself into a position of danger and even though the defendant may not have actually discovered the danger, still if the defendant, by the exercise of proper care could have discovered it, the defendant would be liable for failing to avoid the accident.
In Fontenot v. Freudenstein, La.App., 199 So. 677, we referred to the decision of the Supreme Court in both of these earlier cases and said that the doctrine announced in Jackson v. Cook should more properly be referred to as the doctrine of apparent peril. See also Tillman v. Public Belt R. R. Commission for the City of New Orleans, La.App., 42 So.2d 888. Counsel for plaintiff, in the case at bar, contend that under the doctrine which we referred to as that of apparent peril, the plaintiff should be liable here because had he looked in time he would have noted the danger of the little boy and could have avoided striking him.
Counsel say that it is shown that at the speed at which Locascio was operating his car, had he been on the alert, he could have stopped. They point out that the roadway was 30 feet wide; that an automobile is about 6 feet wide and therefore even after the boy emerged from between the cars which were parked at the curb, he still had some 24 feet to cross in full view of Locascio, and that since he was struck when he was 4 feet from the neutral ground, he must have traversed 20 feet of the roadway after he had emerged from the obstruction between him and the approaching car. Counsel say that the car of Locascio was proceeding at a speed of about 15 miles an hour and since it is shown that what is known as the “reaction time” is about three-quarters of a second, Locascio had some 20 feet within which he could have brought his car to a stop after the boy appeared from between the two parked automobiles. Counsel say that it is well known that an average athlete can run 100 yards in about 10 seconds and they argue that probably the boy in this case could run about one-half as fast and that accordingly if he was only running at half that speed, he was traversing about 5 yards per second; that 5 yards is 15 feet and that therefore he was in full view of Locascio for almost 2 seconds.
It may be true that had Locascio had any reason to know that the boy would emerge at that point and would run across the street, he could have brought his car to a stop before striking the boy, but there was no reason whatever for him to suspect that any such emergency would arise. The calculations of plaintiff are in our opinion too precise and are based on the idea that the human being should react with mechanical precision in such a situation.
Locascio was operating his car at a most reasonable speed; its brakes were in good order; he had passed the pedestrian crossing when suddenly the boy emerged in front of him from the obscurity provided not only by the stationary car at the curb but also by the moving car which was between the boy and the Locascio car. We think it very obvious that Locascio did all that a reasonably prudent and competent driver could have done and it is quite remarkable that he brought his car to a stop as soon as he did. We see no negligence whatever in him.
Consequently the judgment appealed from is affirmed at the cost of plaintiff.
Affirmed.