ELLIS, Judge.
This suit was filed by the plaintiff, as the result of injuries allegedly received by him on January 26, 1953, at approximately eight o’clock A.M. when he was struck by a pickup truck owned by the defendant’s insured, J. E. Swilley, and which at the time was being driven by his wife .admittedly with the husband’s consent and on á community mission. The accident occurred in the town of Oakdale in Allen Parish, some 50 feet north of the intersection of Highway 165 with Sixth Avenue which is the main street. The receiver of the defendant company has been substituted in its place.
The case was duly tried and resulted in a judgment dismissing plaintiff’s suit at his cost, from which this appeal was prosecuted.
On the morning in question Mrs. Swilley was driving her husband’s pick-up truck south on Highway 165 on her way to work and she intended to turn left or east when she reached the intersection of the highway with Sixth Avenue. Just prior to the accident it is definitely shown that the plaintiff was standing on the concrete apron, which would ordinarily be referred to. as the shoulder, that had been laid in front ,of the Pan Am gasoline station. Plaintiff 'was standing some two to six feet west of highway 165.proper.
*44 Plaintiff’s main case in the district court was based upon the argument that Mrs. Swilley drove off of Highway 165 onto the concrete apron in front of the Pan Am station and struck plaintiff when he was standing from two to six feet from the edge of the highway proper. In this Court plaintiff makes the additional argument that although Mrs. Swilley did not see plaintiff, she should have seen plaintiff and even if he walked into the side of the truck she had ample time to discover the peril, which presumably would bring the plaintiff’s case under the doctrine of Rottman v. Beverly, 183 La. 947, 165 So. 153; and Jackson v. Cook, 189 La. 860, 181 So. 195.
On the other hand it is the defendant’s contention that Mrs. Swilley did not drive off of Highway 165 until after the accident and that the plaintiff negligently walked into the side of the pick-up truck, coming in contact with it about the right hand door.
Mrs. Eddie Chandler testified as a witness on behalf of the plaintiff that she was a guest in a car second in line following the Swilley truck and she was sitting on the right hand side. From her testimony, all the cars were evidently traveling slow and she stated that while talking with the other people in the car she “just glanced up,” and saw the plaintiff standing “about two feet from the pave at that time and I turned back and talked to the other girls and the next instance I looked and he was lying on the side of the paved, I mean the shoulder of the pavement,” and immediately Mrs. Swilley pulled off the highway and stopped and walked back to where plaintiff was lying. On cross examination this witness was asked if, up until the time she saw Mrs. Swilley drive off of the highway after the accident, she had previously left the highway and she answered: “I am not sure about that.”
Plaintiff also placed on the stand Sidney Jerdan who is evidently erroneously given the name of “Jordan”, and this gentleman testified that he was an employee of the City of Oakdale and on the morning of the accident was at the Pan Am filling station “when this lady came along and struck Mr. Micklich with the truck and I saw the thing.” He and a Mr. Lawrence rushed to the scene, picked up the plaintiff, placed him in Mrs. Swilley’s pick-up truck and went to Dr. Gray’s hospital but plaintiff would not permit them to take him in but insisted on being taken to his home where he was put to bed. It is this witness’ further testimony that the plaintiff was standing “about something like three steps or six feet, I’d say, from the shoulder of the paved, right in the middle front of the station.” When further questioned he placed the distance that plaintiff was standing from the edge of Highway 165 at six feet. He also testified that it was the right fender of the pick-up truck which struck the standing plaintiff.
The defendant attempted to attack Jerdan’s testimony by testimony that he had refused to give a statement to one of their insurance adjusters on the ground that he did not know anything about the accident and further that he had told the adjuster he had not actually seen it. However Jerdan steadfastly maintained that he had told the adjuster that he had seen it all. The only time that he weakened was when asked on cross examination, “Did you tell him you actually saw a car strike Mr. Micklich?” and he answered, “Now that I just don’t remember if I did or not.” The insurance adjuster testified but his testimony was not too satisfactory as he gave the impression that he had investigated so many accidents and examined so many witnesses since the one in question that it was possible he was confusing the present case with another. The adjuster when placed on the stand by the defendant positively testified that he interviewed Mr. Jerdan and asked him if he would mind giving a report for the insurance company and Jerdan stated, “Well, the only thing that I could say is that I didn’t see the accident when it happened so he didn’t see why he should bother to give a statement or report and that he didn’t like to sign his name to things and get mixed up in them.” The testimony of the adjuster is not sufficient for one to disregard that of Jerdan.
*45 Arthur E. Harper, a barber, of Oakdale, Louisiana, and whose shop was approximately 28 steps from the point of collision between plaintiff and the truck stated that he looked through the south window of his shop and saw plaintiff lying in a crumpled position near a drain on the shoulder of the road on his right side with his feet approximately two feet from the edge of the highway proper; and that his entire body was lying on the concrete apron next to the highway.
A. H. Miller also testified on behalf of the plaintiff that the latter was lying by the side of the highway “on the shoulder” with his feet “pretty close” to the edge of the highway proper.
The plaintiff’s testimony in this case is of very little assistance due to the fact that he is 78 years of age and his testimony indicates that he did not understand all the questions asked him. It could be said, however, that he testified that he did not intend to cross the street at the time he was struck for he always crossed at the light, and further that he was struck off of the highway on the concrete apron.
Mrs. Swilley, who was driving the truck that struck the plaintiff, testified that she was proceeding along Highway 165 in a southerly direction in the city limits of Oakdale and when about 50 feet from the intersection of Sixth Avenue with the highway where she intended to turn to her left, traveling at an approximate speed of 15 miles per hour, she heard a “thump” on the side of her truck, and she pulled off to the side of the highway and stopped. After she got out of the truck she saw the plaintiff on his hands and knees with some persons attempting to help him up. It is clear from her testimony that she never saw the plaintiff until after she heard the “thump” on the side of her truck. She is positive, however, that she did not strike him with the front part of the truck and that he must have walked into the side of her motor vehicle for she never left the highway proper until after she heard the collision and pulled off in order to stop and see what had happened. She further stated that the plaintiff at the time she saw him on his hands and knees just after the accident could not have been more than a foot from the highway. This witness was not cross examined and her testimony, therefore, was rather brief.
W. D. McDaniel, who was called as a witness in favor of the defendant, stated that he was an automobile mechanic in the City of Oakdale, and that on the date of the accident he was traveling behind the pick-up truck being driven by Mrs. Swilley and had been doing so for approximately a quarter of a mile. It is his testimony that he saw the accident happen just after Mrs. Swilley’s truck and his car had been slowed down for the red light. He stated: “I happened to see him walk right off the sidewalk and hit the truck,” meaning Mrs. Swilley’s truck. At the time he testified he was about 10 or 12 feet behind the pickup truck which was going approximately 8 or 10 miles per hour at the time. This witness when asked whether Mrs. Swilley’s truck was entirely on the highway when the plaintiff walked into the side of it testified: “Yes, sir, as I seen it, it was on the highway.” Further in his testimony he was positive that Mrs. Swilley’s truck was on the highway and that plaintiff walked into the side of it. On cross examination he testified that he walked into that portion of the running board near the door.
The facts in this case do not justify the application of the doctrine of discovery of peril or last clear chance so as to render a judgment in favor of the plaintiff. There is no testimony that the plaintiff was walking toward the highway as Mrs. Swilley approached him. On the contrary, most of the witnesses testified that he was standing still and under the testimony upon which the District Court based its judgment, the plaintiff walked into the side of the truck. There is no testimony that Mrs. Swilley, had she seen the plaintiff standing by the side of the highway, should have anticipated that after the front of her truck had passed him he would suddenly walk into the side of the truck.
*46 Upon the testimony given by the above named witnesses, the Judge of the District Court, being of the opinion that the accident happened on the highway and that plaintiff had walked into the truck, in an ably written opinion rendered judgment dismissing plaintiff’s demands. He was impressed with the testimony of McDaniel ¿nd Mrs. Swilley. This is a clear case of a lower court accepting the version of certain witnesses rather than others with no reason shown by the record that it erred in doing so.
■ There being no manifest error in the judgment of the District Court it is hereby affirmed.