JANVIER, Judge.
At about 7:30 o’clock on the evening of November 9, 1954, Julian B. Barrett, a pedestrian, sustained physical injuries, the most serious of which was the fracture of the left ankle, when, on Tchoupitoulas Street just above the corner of Jackson Avenue, in New Orleans, he came into contact with an automobile owned and driven by Alan F. Eggleston. The car was going in a down-river direction on Tchoupitoulas Street.
Alleging that the accident had been caused by the negligence of Eggleston, particularly in failing to maintain “a proper lookout,” in failing to have his car under “proper control”, in “failing to see what he should have seen,” and in failing to reduce his speed or bring his car to a stop, Barrett, in the Civil District Court for the Parish of Orleans, brought this suit for damages against Eggleston and his liability insurance carrier, Houston Fire & Casualty Company.
In the alternative that it should appear that Barrett himself was negligent, he especially alleged that the said Eggleston “had the last clear chance to avoid the accident * * * ” and “failed to do so * * *” He prayed for judgment in the sum of $20,546.
Admitting the occurrence of the accident and that the said insurer had issued a liability insurance policy to Eggleston, defendants denied any negligence on his part and pleaded that, in the alternative, it should appear that Eggleston was in any way negligent, the proximate cause of the accident was contributory negligence of Barrett himself in “attempting to cross the roadway * * * in the middle of the block, at a place not designated for the use of pedestrians * * in that he “stepped into the street and walked directly into the side of the automobile” and in that he, Barrett, “was intoxicated”; “did not keep a proper lookout * * * ” and “stepped from a place of safety directly into the side of the car * * *.”
There was judgment in favor of both defendants dismissing his suit and plaintiff has appealed.
During the oral argument before us and in brief, counsel for Barrett conceded that there was no question at all about his negligence; that he had been at fault in stepping into the street without seeing the approaching car, but counsel asserted that in spite of the negligence of Barrett, the accident would have been avoided had Eg-gleston been on the alert and availed himself of the last clear chance to avoid striking Barrett after the latter, having placed *287 himself in a position of danger, no longer had an opportunity to avoid the accident.
Barrett had been walking in a downriver direction either on or near railroad tracks which are parallel to and only a few feet from the roadway of Tchoupitoulas Street. There is no sidewalk on that side of the street. He testified that he had been walking near the edge of the roadway, but not on it and that, as he intended to cross to the other side of the street, he stepped into the roadway behind a truck which was the second of two vehicles which were standing on that side of the roadway facing Jackson Avenue, the drivers of which vehicles intended, when the opportunity offered, to turn right on Jackson Avenue and to board a Mississippi River ferry.
Barrett says that before he stepped into the street, he looked to the rear and “never seen anything in sight as far as Philip Street.” Philip Street was one block away. He says that he then walked alongside the truck towards its front end and “looked uptown again,” and he again says that he “never seen anything.” He follows this with a statement that after taking three or four steps along the side of the truck, he “crossed over at an angle * * *, made one or two steps” and says that that was the “last” he remembered.
He admitted and, counsel in his brief conceded, that during the afternoon and evening he had consumed seven bottles of beer, but only five or six of them between 2:30 in the afternoon and the time at which the accident occurred (about 7:30 P.M.). He had left a barroom approximately fifteen minutes before the occurrence of the accident.
Eggleston’s version is quite different. He says that he was driving his car down Tchoupitoulas Street at a speed of about 35 miles an hour and that his path was about half a car width from the side curb down which Barrett was walking. He says that he saw Barrett walking on the railroad ties between the track and the roadway and that there is a space of two or three feet between the ties and the roadway and that at that time Barrett was about “seventy-five to ninety feet” from Jackson Avenue. Eggleston is positive that there were no vehicles in the roadway ahead of him and he especially denied that there were two vehicles standing in that roadway as he approached. He says that when his car was “probably two and a half car lengths” from Barrett, Barrett placed one foot in the roadway as though he was about to step into it and then stepped back onto the curb and that almost immediately thereafter Barrett again stepped into the street in an effort to cross it, and that at that moment he, Eggleston, “blew my horn * * * hit my brakes and * * * swung to the center of the road,” but that in spite of this, before he could bring his car to a stop, Barrett struck the right side of his automobile just back of the front bumper.
The testimony of Eggleston is attacked on the ground that it differed in certain particulars from statements made by him soon after the occurrence, particularly in that in his original statements he had said that when Barrett first placed one foot in the street his car was about five car lengths away.
In the written statements referred to Eggleston said: “ * * * when I was about 5 car lengths from him, he got back on the curbstone and stayed there until I was within 2 expansion cracks from him. * * * ”. It seems that the expansion cracks referred to were the division lines in the paving of the street which are availed of to keep the pavement from buckling when temperature changes occur.
We have gone carefully over the statements of Eggleston and find no substantial difference between those statements and his testimony. Those statements were made almost immediately after the accident and his testimony was not given until nearly eighteen months later, and it would be remarkable indeed had his testimony as to distances and measurements *288 been identical with that given in his earlier statements.
According to the testimony and to the report of the police who investigated the accident, Barrett was intoxicated at the time and at first gave an incorrect address and a false name. Sergeant Peter Poretto of the City Police force said: “He appeared to me to be intoxicated.” He also said: “I smelled alcohol and the man, in my estimation * * He was interrupted by an objection from Mr. Boudreaux, counsel for plaintiff, and after the interruption he completed the statement by saying: “The man appeared to be intoxicated to me.”
It is shown that the Eggleston car skidded about 18 feet before coming to a stop and that when it had stopped its left front wheel was possibly one or two feet to the left of the center of the street. Though there is evidence that the paved portion of the street was 33 feet wide, we feel that the record shows that the width was actually 31 feet. Since the car was a little more than six feet in width, this would indicate that when Barrett struck the side of the car, he had traveled in the street about nine feet.
The record convinces us that Barrett was running or at least walking fast when he traversed this distance, so that certainly not more than a second or two elapsed between his leaving the curb and his striking the side of the car. That he was running or at least walking fast is shown by the testimony which he gave under a Discovery Rule for he was questioned as to that testimony and asked as to whether he had not made certain statements. He was asked whether, referring to other vehicles, he had not said: “You can see in between and they stopped and I figured I had a break. That’s when I started to run across.” He was asked: “Did you run?” and he answered: “I don’t know if I run or not. I never had a chance to run.” He was then asked: “Why did you say you started to run across?” and he answered: “That’s what I was thinking about, running across and catching the Jackson bus.”
We are convinced that, when Eggleston saw Barrett with one foot off the curb in the street and then saw that instead of crossing he stepped back to the curb, he was justified in believing that Barrett had seen the car approaching and had decided to step back to the curb and allow it to pass.
The principle which is involved here is quite different from that which was applied in Rottman v. Beverly, 183 La. 947, 165 So. 153, and in Jackson v. Cook, 189 La. 860, 181 So. 195, and in other similar cases. The principle which is applicable here was discussed and applied in Fontenot v. Freudenstein, La.App., 199 So. 677, 680. There the driver of the automobile saw the pedestrian looking towards the approaching car and giving no indication that he did not see the car or that he intended to step into the street, in its path. We said:
“In the case at bar there is nothing to show that there was anything about the appearance of Fontenot to indicate that he was in any - peril. He must have been facing towards the approaching car as he was walking. Often, in crossing a street, a pedestrian, seeing a car approaching and about to pass in front of him, continues on his course until within a few feet of the path of the car and then stops to allow it to go by. * * *
Our conclusion is that there was no negligence on the part of Eggleston and that consequently there is no liability in him nor in his insurer.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.
McBRIDE, J., absent.